No. 22959.

JAMES ALBERT JOHNSON v. THE PEOPLE OF THE STATE OF COLORADO.
(470 P.2d 37)

Decided June 1, 1970.

EDWARD H. SHERMAN, Public Defender, TRUMAN E. COLES, Deputy, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, AUREL M. KELLEY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

JAMES ALBERT JOHNSON was charged with the crime of aggravated robbery (C.R.S. 1963, 40-5-1). Upon arraignment he entered pleas of not guilty and not guilty by reason of insanity at the time of the alleged commission of the offense, and was thereafter accorded a bifurcated trial.

The jury which tried the sanity issue returned a verdict of "sane." The trial on the merits resulted in a verdict of guilty. The defendant was sentenced to a term in the penitentiary. A motion for new trial having been denied, the defendant came here on writ of error challenging the validity of the proceedings to determine (1) his sanity, and (2) his guilt.

The attorney general, by motion, has suggested that the sanity trial must be reversed because of our holding in *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741, and that the guilt trial must be reversed because of our recent holding in *Hollon v. People,* 170 Colo. 432, 462 P.2d 490. Both decisions were announced subsequent to the trial and the filing of briefs by the parties in this court.

### I. *THE SANITY TRIAL.*

On the sixth day of December, 1966, the trial court instructed the jury,

"\* \* \* that in this case the burden of proof is on the prosecution *to prove by a preponderance of the evidence* that the defendant was sane at the time of the alleged commission of the crime." (Emphasis added.)

This instruction was in harmony with C.R.S. 1963, 39-8-1, as amended by Chapter 125, Laws of 1965, then in effect. In *Juhan, supra,* this court, in an addendum to its opinion declaring C.R.S. 1963, 39-8-1, as amended by Chapter 163, Laws of 1967, unconstitutional, also held the 1965 amendment invalid. For the reasons ap-

pearing in *Juhan,* we must reverse the conviction and remand for a new trial on the issue of defendant's sanity. See also *Washington v. People,* 169 Colo. 323, 455 P.2d 656.

The defendant has assigned twelve errors relating to the sanity trial. In order to facilitate the retrial it is necessary that only those bearing upon the defendant's refusal to cooperate with the court-appointed psychiatrist be considered.

Upon the entry of his plea of not guilty by reason of insanity the court appointed Dr. Bradford Murphey, a qualified psychiatrist, to examine the defendant at the jail. In his report to the court, Dr. Murphey revealed that he had interviewed the defendant at the county jail on two occasions, during which he spent a total of one and one-half hours with the defendant. The doctor reported that the defendant had refused to talk with him, answer questions, or make comments of any kind, except on the last visit when the defendant advised the doctor that he did not wish to talk to him; that the doctor would have to talk to the defendant's attorney.

At the hearing, Dr. Murphey testified as to his observations of the actions of the defendant during the times he was with him. On the basis of these observations the doctor gave his opinion that the defendant was sane at the time of the commission of the offense.

On the one hand, the defendant argues that the doctor should have used sodium pentothal or other drugs to assist him in getting the defendant to talk, as is provided for by statute, 1965 Perm. Supp., C.R.S. 39-8-2(5)(a); and, on the other, he maintains that the doctor should not have been permitted to testify that the defendant would not cooperate with him or that defendant was unwilling to talk to him.

■■ It is a little difficult to perceive the consistency of defendant's position. In order to lay a foundation or give a reason or basis for the employment of drugs, the doctor, it seems to us, would have to testify that he followed the more radical procedure because of the defen-

dant's unwillingness to cooperate. In any event, the defendant's failure to cooperate is relevant to a psychiatric examination.

 The defendant has a constitutional right not to talk to the psychiatrist. *French v. District Court,* 153 Colo. 10, 384 P.2d 268. He cannot complain, however, if the doctor is able to draw inferences from his conduct upon which to found an opinion as to his sanity or lack of it. *State v. Huson,* 73 Wash.2d 660, 440 P.2d 192, *cert. denied,* 393 U.S. 1096, 89 S.Ct. 886, 21 L.Ed. 787.

In *Huson, supra, sanity* as well as *guilt* were determined in one trial. It was clear prior to trial that the defendant was going to stand on his constitutional right to remain silent during the psychiatric examination. The trial court, in a pre-trial order, *inter alia,* noted that,
"* * * the State is placed at a great disadvantage when it must prepare against a plea of insanity, and if its psychiatrists are met with a wall of silence, they would have no way of forming an opinion as to the defendant's sanity at the time of the commission of the act. * * *"
To cover this contingency, the court's order provided:
"If the defendant chooses to remain silent when the State's psychiatrist attempts his examination, that fact may be shown to the jury at an appropriate time during defendant's trial."

 We hold that not only the fact of noncooperation may be shown, but that the expert witness may testify to any conclusions he is able to draw from the conduct or actions of the defendant during such an interview.

This is true for the simple reason that if the expert witness is able to draw any conclusions as to defendant's mental condition from what the defendant does or says, it is relevant to the inquiry prompted by the defendant's plea. *People v. French,* 12 Cal.2d 720, 87 P.2d 1014.

 It should be noted that the legislative scheme for determining a defendant's mental condition at the time of the alleged offense contemplates "observation" as well as "examination." It follows that what the psy-

chiatrist learns from either "observation" or "examination" or from both processes, to the extent that such "learning" contributes to his opinion is relevant and admissible in evidence. *See* 1965 Perm. Supp., C.R.S. 39-8-2.

## II. *THE GUILT TRIAL.*

After both sides rested the court submitted to counsel the instructions it proposed to give to the jury. There was no instruction on the lesser included offense of simple robbery. The defendant requested that such an instruction be given. The court refused the request, stating that,

"The reason the Court is not including a charge of simple robbery in this case is for the reason that there is not an iota of evidence to substantiate the crime of simple robbery, * * *."

The court's stated reason is a valid one. The only question to be determined is whether, under the evidence as disclosed by the record, there was any evidence upon which a jury could have properly returned a verdict of guilty of simple robbery. *Lucero v. People,* 161 Colo. 568, 423 P.2d 577; *Vigil v. People,* 158 Colo. 268, 406 P.2d 100; *Funk v. People,* 90 Colo. 167, 7 P.2d 823.

As indicated above, the attorney general, in his motion to submit on the briefs, concluded that "the judgment in the trial on the merits must be reversed pursuant to *Hollon v. People.*" 170 Colo. 432, 462 P.2d 490.

█ In *Hollon* we reiterated:

"It is the rule in Colorado that in a prosecution where aggravated robbery has been charged the trial judge must give an instruction on the lesser offense of simple robbery when such instruction is requested by the defendant *and when it is supported by the evidence. * * *"* (Emphasis added.)

As noted, the simple robbery instruction was requested by the defendant. The remaining question is whether "it is supported by the evidence."

The evidence here is more akin to that in *Vigil* than

*Hollon,* as will appear from a brief summary. It is interesting to note that in his brief the attorney general relied on *Vigil* and *Lucero.* Those decisions were not overruled by *Hollon. Hollon* applied the same rule to a different fact situation.

In *Hollon,* cross-examination of the victim disclosed that the defendant did not threaten, strike or attempt to strike the victim. We there said,

"While the evidence presented by the prosecution was sufficient to create a prima facie case on the charge of aggravated robbery, McGraw v. People, 154 Colo. 368, 390 P.2d 819, we conclude that the questions asked on cross-examination of the victim and the answers given were sufficient to raise the issue whether the defendant actually had the specific intent to maim, wound, or kill if resisted, * * *."

 The only evidence in the present record which might be considered comparable was the victim's statement that he was "not afraid." Actually, it is defendant's acts and conduct, not the victim's stated reaction, which is relevant. This, plus the conduct of the defendant which occurred in the immediate presence of the victim, might have brought us to the same conclusion we reached in *Hollon,* were it not for defendant's conduct in attempting to escape.

 The escape is an integral part of the robbery. The elusion of apprehension when closely connected in point of time, place and action with the actual taking of the money or goods from the victim constitutes a single transaction. Any acts or conduct of the defendant which occur during such a transaction are relevant to the offense charged. *Vigil v. People, supra; Bizup v. People,* 150 Colo. 214, 371 P.2d 786, *cert. denied* 371 U.S. 873, 83 S.Ct. 144, 9 L.Ed.2d 112; *Whitman v. People,* 161 Colo. 110, 420 P.2d 416.

In the present case the record discloses that the victim, as soon as the defendant left the store, called the police. A description of the robber was relayed by the dis-

patcher over the police radio. Police officers Gurnsey and Riedel, in a cruiser, within a few minutes of the crime, responded, and within two blocks of the supermarket observed an individual who reasonably fitted the broadcast description of the robber. Gurnsey drove the cruiser curbside and Officer Riedel jumped from the cruiser and approached the suspect to ascertain his identity. The suspect turned and fired a shot at Riedel. Just before the shot was fired the suspect said, "You are not going to take me."

Under these circumstances the defendant was not entitled to an instruction on simple robbery; he had manifested "the specific intent to maim, wound or kill, if resisted," and placed himself outside of the ambit of the rule set forth in *Hollon, supra.*

The defendant assigns fifteen errors which he alleges were prejudicial to a fair trial. If this were a close case on the facts it might be reasonably argued that two or three of the alleged errors could have affected the result of the trial. Here, the evidence is so overwhelming and convincing that it is inconceivable that the result would have been different had none of the alleged errors occurred. The defendant demonstrated no prejudice from any of these assigned errors. For this reason some of the errors will be touched on lightly and the remainder will not be discussed at all.

At the commencement of the trial the defendant *personally* requested a continuance because his counsel was not prepared for trial. Court-appointed counsel advised the court that the defendant had, at first, refused to cooperate with him and that he was as ready as he could be under the circumstances.

No real justification for the request was developed. The granting of a continuance is a matter resting within the sound discretion of the trial judge. An examination of the whole record fails to suggest that the defendant was prejudiced by the court's denial of his

request. Consequently, there was no abuse of the court's discretion.

The defendant, who was shot several times following his unsuccessful attempt to shoot the arresting officers, was a patient at Denver General Hospital. He was identified at the hospital by the victim of the robbery a day or two following the incident. Defendant's counsel was not present, nor had defendant waived any right to have counsel present. The defendant relies solely and entirely on *United States v. Wade*, 338 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, in support of his argument.

A simple answer is that the decision in *Wade* was announced four months after the defendant's conviction. *Wade* is not retroactive. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The defendant did not cite nor rely on *Stovall*. However, there is always a *due process* problem involved in out-of-court identification. A slight suggestion of denial of *due process* seems to pervade the defendant's argument and requires a brief answer. We therefore point out that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it." *Stovall, supra*. The present situation, where the accused is hospitalized, is the reverse of *Stovall*, where the victim was hospitalized, but the same reasoning which sanctioned the confrontation in *Stovall* is applicable here. Also, see *Neighbors v. People*, 171 Colo. 349, 467 P.2d 804.

The judgment and sentence as to the substantive offense are affirmed and the proceedings and judgment as to the sanity trial are reversed and remanded for further proceedings consistent with the views expressed herein.