The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Timothy VIALPANDO, Defendant–Appellant.

No. 94CA1068.

Colorado Court of Appeals, Div. V.

Aug. 7, 1997.

Rehearing Denied Oct. 9, 1997.

Certiorari Denied May 11, 1998.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Roger G. Billotte, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Timothy Vialpando, Pro Se.

Frolich & Jensen, LLC, Lindy Frolich, Denver, for Defendant–Appellant (on the Opening Brief).

Opinion by Judge TAUBMAN.

Defendant, Timothy Vialpando, appeals from a judgment of conviction entered upon jury verdicts finding him guilty of first degree murder, robbery, escape, possession of contraband, and being a habitual criminal. We affirm.

Defendant was taken to a hospital from a county jail for treatment of several self-inflicted stab wounds. At the hospital, he cut through his shackles with a hacksaw blade he had hidden in his clothing. When a sheriff's deputy entered defendant's hospital room, defendant attacked him. The door to the room closed when the deputy backed into it during the struggle. Witnesses heard two shots fired and saw defendant emerge from the room with the deputy's gun. The deputy had been fatally shot. Defendant fled but was captured a few minutes later.

In *People v. Vialpando*, 809 P.2d 1082 (Colo.App.1990), a division of this court reversed a judgment of conviction entered against defendant. On remand, defendant pleaded not guilty by reason of insanity. However, after a sanity trial, a jury found him sane at the time of the charged offenses. After a trial on the merits, the jury rejected defendant's affirmative defense of impaired mental condition and convicted him on all counts charged.

### I. Request for Self–Representation

Defendant first contends that the trial court erred in denying his request to represent himself. We disagree.

A person accused of a crime enjoys the constitutional right to self-representation.

The right is personal to the defendant and may not be abridged by requiring a defendant to accept a lawyer when he or she desires to proceed *pro se*. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Such right, however, is not unqualified and its exercise must be unequivocal.

Thus, if a defendant makes a demand for self-representation, the court must engage the defendant in a dialogue to explain the consequences of proceeding *pro se* and the disadvantage of self-representation, and to determine if the waiver of the right to counsel is knowing, voluntary, and intelligent.

A criminal defendant may not assert the right to self-representation solely to impede the efficient administration of justice. Hence, unless a request is made in ample time before the date set for trial, it is incumbent upon the trial court to determine whether the request is made for purposes of delay or to gain tactical advantage, and whether the lateness of the request may hinder the administration of justice. *People v. Mogul*, 812 P.2d 705 (Colo.App.1991).

Further, if the court concludes that a defendant's motion is an attempt to delay the proceedings rather than a legitimate assertion of his or her right to self-representation, a trial court does not abuse its discretion in rejecting defendant's motion without making findings of fact regarding his or her competence to waive the right to counsel. *People v. Bolton*, 859 P.2d 303 (Colo.App.1993).

Here, defendant was continuously represented by an attorney beginning in July 1992 but did not make an unequivocal request to proceed *pro se* until March 10, 1994, five days before the start of the sanity trial. The trial court stated it would consider the request but was inclined to deny it. Although defendant was present at proceedings held on March 14, 15, 16, and 17, 1994, he did not renew his request for self-representation.

Defendant finally renewed the request on March 18, 1994, after the sanity trial had begun. The trial court inquired whether, if permitted to proceed *pro se*, he wished to dismiss his attorneys or have them serve as advisory counsel. Defendant responded that he could not answer until he had access to a law library to research the issue. Just before the trial on the merits began, defendant again indicated that he wished to proceed *pro se*, and stated again that he could not be sure of his desire for self-representation until he had been given access to a law library to research the issue.

In denying defendant's requests, the court found that defendant's first unequivocal request came only five days before trial and approximately 18 months after counsel had been appointed and defendant had pleaded not guilty, that defendant had engaged in disruptive behavior while present in court, that he previously had indicated that he was dissatisfied with his attorneys' representation but had later changed his mind, and that his attorneys had competently represented him throughout the proceedings. Accordingly, the court concluded that he was merely attempting to disrupt and delay the proceedings.

We conclude that the trial court did not abuse its discretion in finding that defendant's eleventh hour request was designed to disrupt the proceedings and would have resulted in delay. Accordingly, the trial court did not abuse its discretion in denying defendant's request for self-representation. *See People v. Mogul, supra.*

## II. Access to Law Library and Law Books

Defendant next contends that he was deprived of his right to access to the courts because he was denied reasonable access to a law library and law books. We disagree.

Under the Sixth Amendment, a defendant acting in a *pro se* capacity is guaranteed access to law libraries or alternative sources of legal knowledge. However, when a defendant is represented by counsel or is proceeding *pro se* with standby or advisory counsel available to provide legal assistance if needed, such resources are considered to be the functional equivalent of a law library or alternative sources of legal knowledge. *People v. Rice*, 40 Colo.App. 357, 579 P.2d 647 (1978). *See also State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979) (even if legal

materials inmates had access to were inadequate, such inadequacy could be cured by allowing or providing inmate with assistance of counsel); *People v. Mack*, 190 Mich.App. 7, 475 N.W.2d 830 (1991) (same).

■ Here, defendant was represented by at least one attorney throughout the proceedings and, for a substantial portion of the proceedings, was represented by two attorneys. Further, the trial court found that defendant's attorneys had provided him with competent and effective representation.

Accordingly, there was no infringement of his Sixth Amendment rights and, thus, no basis for reversal.

## III. Standing

Defendant next contends that the trial court deprived him of various federal and state constitutional rights by declining to rule on the constitutionality of statutes requiring that a defendant who pleads not guilty by reason of insanity, asserts the affirmative defense of impaired mental condition, or raises the question of incompetency to proceed, waives claims of confidentiality or privilege as to communications made in the course of a mental status examination and must disclose such information to the prosecution.

More specifically, he asserts that the lack of a ruling on the constitutionality of the statutes prevented him from retaining his own psychiatrist and that, therefore, he was denied his right to effective assistance of counsel and due process because of the lack of a defense psychiatrist to assist his counsel in determining his competency and in preparing a defense. Reasoning that a wealthy defendant may avoid the statutory disclosure requirements by retaining a psychiatrist to perform an examination before he or she enters a plea, but an indigent defendant cannot do so because that person cannot receive state funds for an independent defense expert until after he or she has pleaded not guilty by reason of insanity or impaired mental condition, defendant also asserts a violation of his right to equal protection of the law. We conclude that defendant does not have standing to assert these contentions.

At the times pertinent here, Colo. Sess. Laws 1987, ch. 119, § 16–8–103.6 at 622 provided that a defendant who placed his or her mental condition at issue by pleading not guilty by reason of insanity, by asserting the affirmative defense of impaired mental condition, or by raising the question of incompetency to proceed, waived certain claims of confidentiality or privilege. These waivers extend to communications made by the defendant to a physician or psychologist in the course of an examination or treatment for such mental condition for the purpose of any trial or hearing on that issue. The statute further provided that the court must order both the prosecutor and defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who examined or treated the defendant for such mental condition.

Section 18–8–108(2), C.R.S. (1996 Cum. Supp.) also provides that if a defendant is examined by an expert of his or her choice, a copy of any report of such examination must be furnished to the prosecution.

Statutes are presumptively valid and will not be overturned on the strength of speculations and conjectures of counsel. Thus, a person challenging the constitutionality of state action must show actual injury to a legally protected interest. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

■ Here, the trial court offered to permit defendant to retain at state expense a defense psychiatrist to evaluate him and determine his competency, sanity, and mental condition. However, the parties disputed whether the identity of such expert had to be revealed to the prosecution under § 16–8–108(2) if defendant decided not to call the psychiatrist as a witness. Therefore, the court ordered the identity of the expert to be submitted to the court *ex parte* with each party reserving its right to argue the disclosure issue after the examination. The court further assured defendant that, if he elected not to call the psychiatrist to testify, it would not order disclosure of the psychiatrist's report until it had ruled on the constitutionality of the statute and that defendant would not be waiving his right to argue the statute's

constitutionality by submitting to the examination.

Defense counsel refused to permit defendant to be examined unless the court could assure him that the expert's report would not have to be disclosed to the prosecution if counsel decided not to call the expert as a witness.

Four days later, the court modified its ruling to provide that if it determined that disclosure was appropriate, it would permit defendant a stay of the disclosure order pending his appeal. However, the trial court declined to rule on the constitutionality of the statute. It reasoned that such ruling was premature because a defense expert had not been selected, an examination had not occurred, a report had not been prepared, defendant had not decided whether to call the expert, and the prosecution had not requested disclosure.

In addition, the prosecution conceded that as long as the case proceeded to trial as scheduled, it would not ask for disclosure if defendant decided not to endorse his expert as a witness. Nonetheless, defense counsel continued to refuse to permit an examination of defendant in the absence of an assurance that, if defendant decided not to call his expert to testify, the information therefrom would not be disclosed to the prosecution under any circumstances.

Under these circumstances, we conclude that any injury that defendant might have suffered was merely speculative because the court assured defendant that it would not order disclosure of the report until it had ruled on the constitutionality of the statute and that it would permit a stay of any disclosure order pending an appeal. Further, the prosecution conceded that it would not ask for disclosure of an expert not endorsed as a witness unless the trial was otherwise continued.

Accordingly, we further conclude that defendant did not suffer an injury in fact and lacks standing to assert the constitutionality of the statutes at issue here.

## IV. Comments on Noncooperation with Mental Status Examination

Defendant contends that his constitutional right against self-incrimination was violated when a court-appointed psychiatrist was allowed to testify about defendant's non-cooperation with his mental status evaluation. He therefore asserts that the statute specifically permitting such expert testimony is unconstitutional. We are not persuaded.

As relevant here, § 16–8–106(2)(a), C.R.S. (1996 Cum.Supp.) provides that, for offenses committed before July 1, 1995, a defendant has a privilege against self-incrimination during a court-ordered mental status examination. However, the fact of defendant's noncooperation with psychiatrists and other personnel conducting the examination may be admissible in the defendant's trial on the issues of insanity, competency, or impaired mental condition.

Here, the court-appointed psychiatrist testified at the sanity and guilt trials that he had considered defendant's noncooperation in determining that he had been sane and not mentally impaired at the time of the charged offenses.

In *Johnson v. People*, 172 Colo. 72, 470 P.2d 37 (1970), the supreme court held that a defendant's noncooperation during a psychiatric examination may be shown to the jury during a sanity trial because, if a defendant stands on his or her constitutional right to remain silent during a psychiatric examination, the state's psychiatrists would have no way of forming an opinion as to the defendant's mental status at the time of the commission of the charged offenses. The *Johnson* court did not specifically determine whether such noncooperation was admissible at the guilt trial because the defendant had not asserted the affirmative defense of impaired mental condition.

However, the *Johnson* court cited with approval *State v. Huson*, 73 Wash.2d 660, 440 P.2d 192 (1968), *cert. denied*, 393 U.S. 1096, 89 S.Ct. 886, 21 L.Ed.2d 787 (1969), in which sanity and guilt were determined in one trial. There, the Washington Supreme Court held that a defendant's silence during a psychiat-

ric examination could be shown to the jury at an appropriate time during defendant's trial.

Further, the *Johnson* court noted that the legislative scheme for determining a defendant's mental condition at the time of the alleged offense contemplates "observation" as well as "examination" and, therefore, it follows that what a psychiatrist learns from either "observation" or "examination" or from both processes, to the extent that such learning contributes to his or her opinion, is relevant and admissible in evidence. *See* 1965 Perm. Supp., C.R.S.1963, 39–8–2. We note that § 16–8–106(1), C.R.S. (1996 Cum. Supp.) also provides for psychiatric observation and examination of a defendant.

■ We therefore conclude that § 16–8–106(2)(a), C.R.S. (1996 Cum.Supp.) codifies the holding of *Johnson v. People, supra,* that, during a sanity trial, a psychiatrist may comment on the fact of a defendant's noncooperation during a mental status examination. Additionally, the reliance by the *Johnson* court on *State v. Huson, supra,* supports the same conclusion with respect to the trial on the merits.

■ Accordingly, we hold that § 16–8–106(2), C.R.S. (1986 Repl.Vol. 8A) does not violate a defendant's privilege against self-incrimination, either at the sanity trial or guilt trial. Thus, the trial court did not err in permitting the court-appointed psychiatrist to testify at the sanity and guilt trials as to defendant's noncooperation during his mental status examination.

## V. Evidence of Bad Acts

Defendant next contends that the trial court erred by admitting evidence of other bad acts. We disagree.

■ Evidence of other crimes, wrongs, or acts is admissible if: (1) it relates to a fact that is of consequence to the determination of the action; (2) it is logically relevant, i.e., has any tendency to make the existence of such fact more or less probable; (3) the logical relevance is independent of the intermediate inference that the defendant has a bad character and acted in conformity therewith; and (4) the probative value of the evidence is not substantially outweighed by

the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314 (Colo.1990). Further, such evidence is admissible for certain purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

■ A trial court has substantial discretion when determining the admissibility of other acts evidence, and an appellate court will not overturn its determination absent an abuse of discretion. *People v. Groves,* 854 P.2d 1310 (Colo.App.1992).

Here, the prosecution was permitted to introduce evidence that: (1) defendant escaped from a county jail in New Mexico in 1978; (2) in another incident in 1978, while being transported in a police car, defendant removed his handcuffs, held a knife to a police officer's throat and attempted to take the officer's gun; (3) he had escaped from a correctional institution in 1978; (4) defendant had stated during a psychiatric evaluation in 1973 that he wanted to kill police officers and wished he had an opportunity to do so; (5) defendant was in possession of handcuff keys during the 1988 trial; (6) he was in possession of handcuff keys and documents relating to plans to escape from custody during the 1994 trial; and (7) defendant had stated to officers in 1994, after a search uncovered evidence of an attempt to escape, that "You're always fucking with me. That's why I kill you fuckers."

■ This evidence was offered to show a history of attempts to escape from custody and the willingness to use force against law enforcement officers. The evidence tends to prove defendant's intent, preparation, and plan to escape and murder the deputy and that the murder was not an accident or mistake. It is therefore admissible under CRE 404(b). Further, the court gave the jury a proper limiting instructions with regard to this evidence.

Thus, the trial court did not abuse its discretion in permitting the other acts evidence to be introduced.

## VI. Law of the Case

Finally, defendant contends that the trial court abused its discretion in not following the law of the case doctrine because even though the escape charge was severed from the other charges in the first trial, the trial court declined to follow that ruling in the second trial. We disagree.

Prior relevant rulings by a trial court in the same case are generally to be followed by that court unless to do so would result in error or unless changed conditions make the prior ruling no longer sound. *S.O.V. v. People in Interest of M.C.*, 914 P.2d 355 (Colo. 1996).

Law of the case, when applied to a court's power to reconsider its own prior rulings, is a discretionary rule of practice because it merely expresses the practice of courts generally to refuse to reopen what has been decided. *People ex rel. Gallagher v. District Court*, 666 P.2d 550 (Colo.1983).

Crim. P. 8(a) authorizes the joinder of offenses in the same indictment or information if the offenses charged are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Under Crim. P. 14, a defendant may move to sever counts when it appears that such joinder is prejudicial, but such a motion is addressed to the sound discretion of the trial court. *People v. Taylor*, 804 P.2d 196 (Colo.App.1990).

Here, the escape charge was severed from the other charges in defendant's first trial to prevent the jury from knowing that he had been in custody for the sexual assault on a child conviction. However, at the second trial, defendant did not seek to prevent the jury from knowing of the sex offense conviction. Indeed, defendant wanted the jurors to know of this conviction because he asserted that his impaired mental condition resulted in part from having been wrongfully convicted. Accordingly, the original reason for severing the charges was no longer present, and defendant has not demonstrated prejudice as a result of the trial court's refusal to sever the escape charge at his second trial.

Thus, we conclude that the trial court did not abuse its discretion in determining that changed circumstances did not require it to follow its previous decision to sever the escape charge.

The judgment is affirmed.

RULAND, J., and ERICKSON*, Justice, concur.