The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Manuel HERRERA, Jr., Defendant–Appellant.

No. 01CA1511.

Colorado Court of Appeals, Div. V.

Dec. 31, 2003.

Rehearing Denied Feb. 26, 2004.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Manuel Herrera, Jr., appeals the judgment of conviction entered upon a jury verdict rejecting his insanity defense and finding him guilty of first degree murder. We reverse and remand for a new trial.

Some hours after defendant's father told him he needed to get a job or move out of the family home, defendant retrieved a knife from the garage, walked to his parent's bedroom, awakened his father, and stabbed him repeatedly. Defendant's brother stopped the attack and defendant fled. His father died from the injuries, and upon his arrest several days later, defendant admitted the killing.

Defendant had been previously treated for a number of mental health issues. Because he asserted that he suffered from a condition of mind caused by mental disease or defect that prevented him from forming a culpable mental state, defendant pleaded not guilty by reason of insanity. The trial court ordered him to submit to a sanity examination at the Colorado Mental Health Institute in Pueblo (CMHIP).

Before trial, defendant filed motions challenging the constitutionality of several provisions of the insanity statutes, including the unitary trial procedure, and requesting a bifurcated trial on the issues of sanity and guilt. Defendant also moved to suppress his statements to the CMHIP psychiatrist, alleging that they were involuntary. The trial court denied the motions.

At trial, defendant's expert opined that defendant was probably psychotic at the time of the offense and lacked the capacity to form the requisite culpable mental states of intent and deliberation. However, the CMHIP psychiatrist opined that defendant was not suffering from a mental condition that rendered him unable to form the requisite mental state at the time of the offense. Despite defendant's motion in limine that sought to prohibit such testimony, this expert also opined that defendant acted with intent and after deliberation during the killing.

## I.

Defendant contends the trial court erroneously denied his challenge to the constitutionality of four provisions in the insanity statute, § 16–8–101, et seq., C.R.S.2003. He asserts that the current statutory scheme violates his privilege against self-incrimination and his right to effective assistance of counsel. We disagree.

The interpretation of statutes is a question of law subject to de novo review. *Hendricks v. People,* 10 P.3d 1231 (Colo.2000).

Our task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the plain and ordinary meaning of the statutory language. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986).

When the language is clear and unambiguous, the statute must be construed as written, without resort to interpretive rules of statutory construction. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994).

If, however, the statutory language lends itself to alternative constructions, and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *People v. Terry,* 791 P.2d 374 (Colo.1990).

When reviewing a statute upon a constitutional challenge, we must presume the statute is constitutional, *People v. Baer,* 973 P.2d 1225 (Colo.1999) and we must interpret the statute to avoid constitutional defects. *People v. Torres,* 848 P.2d 911 (Colo. 1993). Additionally, to overcome the presumption that a statute is constitutional, the challenger bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *See People v. Buckallew,* 848 P.2d 904 (Colo.1993).

### A.

Subsections (1)(a) and (1.5)(a) of § 16–8–107, C.R.S.2003, deal with introduction of evidence in cases involving insanity pleas. Defendant contends, and the People agree, that both subsections apply to him. Those subsections provide, in pertinent part:

(1)(a) [N]o evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination ... is admissible against the defendant on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues, except to rebut evidence of his or her mental condition introduced by the defendant to show incapacity to form a culpable mental state; and, in such case, that evidence may be considered by the trier of fact only as bearing upon the question of capacity to form a culpable mental state, and the jury, at the request of either party, shall be so instructed.

(1.5)(a) [E]vidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination ... is admissible only as to the issues raised by the defendant's plea of not guilty by reason of insanity, and the jury, at the request of either party, shall be so instructed....

▆▆▆▆ Defendant contends that the use of statements obtained from his sanity examination violates his privilege against self-incrimination because the statute allows the prosecution to employ his own statements to prove his guilt of the charged offense. He argues that § 16–8–107(1.5)(a) does not include the protective language of § 16–8–107(1)(a) that such evidence may be considered by the trier of fact only as bearing upon the question of "capacity to form a culpable mental state." Therefore, he asserts, the phrase in § 16–8–107(1.5)(a), "the issues raised by a defendant's plea of not guilty by reason of insanity," includes the ultimate issue of whether a defendant had in fact formed the requisite culpable mental state and not merely whether he or she had the capacity to do so. The People assert that the proper statutory interpretation makes it clear that the only permissible use of such statements is in determining, as relevant here, whether a defendant was capable of forming the culpable mental state and, so construed, the provisions are constitutional. We agree with the People.

Defendant's assertion of the insanity defense was based solely upon the "impaired mental condition" definition contained in the statute. *See* § 16–8–101.5(1)(b), C.R.S.2003. Accordingly, our analysis is limited to circumstances involving that assertion.

▆▆▆▆ To preserve the privilege against self-incrimination, evidence derived from court-ordered sanity examinations can only be used to determine a defendant's capacity to form the requisite mental state. *See People v. Rosenthal*, 617 P.2d 551 (Colo.1980)(unrestricted use at the guilt trial of the defendant's psychiatric communications is contrary to the privilege against self-incrimination; procedures governing the insanity defense cannot be applied to destroy that privilege); *Lewis v. Thulemeyer*, 189 Colo. 139, 142, 538

P.2d 441, 443 (1975)("By definition, self-incrimination contemplates the use of the confession or admission to aid in establishing the guilt of the defendant."). Hence, the privilege against self-incrimination is not implicated by a court-ordered mental examination when the information obtained therefrom is admitted only on the issue of mental condition. *See People v. Galimanis*, 765 P.2d 644 (Colo.App.1988)(defendant's privilege against self-incrimination implicated only when evidence he is compelled to produce is admitted on the issue of guilt); *see also People v. Tally*, 7 P.3d 172 (Colo.App.1999)(statements made by a defendant in a psychiatric exam may be admitted to prove sanity but not guilt of the charged offense). Therefore, the statutory provisions at issue must be interpreted accordingly.

As the People note, the quoted subsections provide essentially the same protection: evidence first acquired from a defendant during court-ordered examinations may only be used at trial to establish the defendant's capacity to form the mental state at issue. While we acknowledge that § 16–8–107(1.5)(a), unlike § 16–8–107(1)(a), does not contain specific language stating that such evidence may be considered "only as bearing upon the question of capacity to form a culpable mental state," nevertheless, whether the subsection specifically refers to "capacity" is not conclusive. The reference in § 16–8–107(1.5)(a) to issues raised by the insanity plea relates to the defendant's "mental condition," and is, in our view, equivalent to the reference in § 16–8–107(1)(a) to a defendant's "capacity to form a culpable mental state."

To the extent these two subsections could be given an alternative construction, the legislative history supports our interpretation. Section 16–8–107(1)(a) was originally applicable to the former affirmative defense of impaired mental condition. When that defense was incorporated into the insanity defense, *see* § 16–8–101.3, C.R.S.2003, testimony before the General Assembly noted that § 16–8–107(1.5)(a) simply restated former law providing that any communications were admissible only as to issues raised by an insanity plea. *See* Hearings on H.B. 96–1145 before the House and Senate Judiciary Committees,

60th General Assembly, Second Session (Jan. 16 & 24, 1996). So construed, those subsections do not infringe upon the privilege against self-incrimination.

■ Defendant nevertheless asserts that the jury instructions provided for by these subsections are insufficient to protect statements from being used to establish guilt of the charged offense. We disagree.

■ Both subsections provide for jury instructions to permit use of the cited evidence as bearing only on issues of a defendant's sanity. Juries are presumed to understand and heed jury instructions absent evidence to the contrary. *See People v. Ibarra,* 849 P.2d 33 (Colo.1993). Jury instructions can therefore be sufficient to protect a defendant's privilege against self-incrimination in the face of a court-ordered sanity examination. *See Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)(two-stage jury trial for habitual offenders not unconstitutional because of some collateral prejudice to defendant; while all joint trials furnish inherent opportunities for unfairness, jury is expected to follow limiting instructions); *People v. Bielecki,* 964 P.2d 598 (Colo.App. 1998)(jury instructions limiting use of evidence obtained during sanity exam were sufficient).

Here, the jury was properly instructed to consider evidence derived for the first time from defendant's sanity examination only as to issues raised by his insanity plea, and for no other purpose. The instruction, which tracked § 16–8–107(1.5)(a), served to ensure that defendant was protected from the improper use of such evidence.

### B.

Defendant next contends that § 16–8–106(2)(c), C.R.S.2003, is unconstitutional because it impermissibly required him to choose between cooperating with the sanity exam and thus incriminating himself or forfeiting his insanity defense. We disagree.

Section 16–8–106(2)(c) essentially requires a defendant to cooperate with a court-ordered sanity examination or lose the ability to call psychiatrists or other expert witnesses to provide evidence on his or her mental condition, including insanity or competency. The section provides, in pertinent part:

> The defendant shall cooperate with psychiatrists and other personnel conducting any examination ordered by the court pursuant to this section. Statements made by the defendant in the course of such examination shall be protected as provided in section 16–8–107. If the defendant does not cooperate with psychiatrists and other personnel conducting the examination, the court shall not allow the defendant to call any psychiatrist or other expert witness to provide evidence at the defendant's trial concerning the defendant's mental condition including, but not limited to, providing evidence on the issues of insanity or competency.... In addition, the fact of the defendant's noncooperation with psychiatrists and other personnel conducting the examination may be admissible in the defendant's trial to rebut any evidence introduced by the defendant with regard to the defendant's mental condition including, but not limited to, the issues of insanity and competency.... This paragraph (c) shall apply to offenses committed on or after July 1, 1999.

### 1.

■ As previously noted, a defendant does not incriminate himself or herself by making statements during a court-ordered sanity examination so long as the use of such statements is limited to the issue of mental condition. Indeed, § 16–8–106(2)(c) provides that statements made during the examination are protected pursuant to § 16–8–107. Hence, the privilege against self-incrimination is not violated when psychiatrists who have examined a defendant testify regarding the defendant's statements to them in that context. *See Castro v. People,* 140 Colo. 493, 346 P.2d 1020 (1959); *People v. Bielecki, supra; People v. Vialpando,* 954 P.2d 617 (Colo.App. 1997).

Defendant argues that cases such as *Castro* and *Bielecki* were decided before 1999, when § 16–8–106(2)(c) was enacted, and that the applicable statute then stated "[T]he defendant shall have a privilege against self-

incrimination during the course of an examination under this section," a phrase that § 16–8–106(2)(c) does not include. *See* § 16–8–106(2)(a),(b), C.R.S.2003. However, the fact that § 16–8–106(2)(c) fails to mention the privilege against self-incrimination does not mean it has abolished that protection. Indeed, a statute cannot abolish a constitutional right. *See Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)(constitutional mandate may not be overruled legislatively); *In re Interrogatories by Colo. State Senate,* 168 Colo. 558, 452 P.2d 391 (1969)(a legislature is supreme in legislative matters except as its power is limited by a constitutional provision).

Thus, a defendant who commits a crime subject to this new statutory scheme retains the privilege against self-incrimination during a court-ordered sanity examination. The insanity statute protects that privilege by limiting evidence obtained during an examination to a defendant's mental condition. *See* § 16–8–107(1)(a), (1.5)(a).

2.

 Defendant also asserts that because the 1999 statute excludes defense expert testimony on the issue of insanity if the defendant does not cooperate in the sanity examination, the use of statements from that exam forces a defendant to choose between self-incrimination or loss of the right to present an insanity defense. We are not persuaded.

Section 16–8–106(2)(c) does not force such a choice. First, it does not require a defendant to cooperate against his or her will during an exam. There is no mechanism by which a defendant can be legally compelled to answer an examiner's questions or participate in testing.

Second, the statute does not completely bar a defendant from raising insanity as a defense. *See French v. Dist. Court,* 153 Colo. 10, 384 P.2d 268 (1963)(trial court could not strike insanity plea in response to defendant's refusal to cooperate). It only precludes expert testimony in support of such a defense and allows evidence of noncooperation to be used to rebut the defense. A defendant is only required to comply with § 16–8–106(2) if expert testimony in support

of an insanity defense is desired. While a court may not strike a defense based on failure to cooperate, it may bar the defendant from introducing psychiatric testimony in support thereof. *See Lee v. County Court,* 27 N.Y.S.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452 (1971)(when defendant chooses not to cooperate with exam, he or she can be precluded from offering psychiatric testimony); *Johnson v. People,* 172 Colo. 72, 470 P.2d 37 (1970); *cf. People v. Roadcap,* 78 P.3d 1108 (Colo.App.2003)(trial court did not preclude mental condition defense by requiring defendant to comply with portion of insanity statute requiring notice to be given to prosecution and submission to court-ordered examination).

A contrary result would permit a defendant to raise and support an insanity defense while unfairly depriving the prosecution of any method of testing the validity of that defense. *See Johnson v. People, supra,* 172 Colo. at 77, 470 P.2d at 40 (if defendant raises a mental defense, he or she still has the right to remain silent during an exam; however "the State is placed at a great disadvantage when it must prepare against a plea of insanity, and if its psychiatrists are met with a wall of silence, they would have no way of forming an opinion as to the defendant's sanity at the time of the commission of the act") (quoting *State v. Huson,* 73 Wash.2d 660, 440 P.2d 192, 197 (1968)).

Thus, requiring a defendant to cooperate during an exam does not subject him or her to an unconstitutional risk of self-incrimination, nor is cooperation a prerequisite to asserting a mental condition defense. Hence, a defendant is not forced to choose between constitutional rights.

Before the enactment of § 16–8–106(2)(c) in 1999, the remedy for noncooperation was limited to comment by the state on that noncooperation, a remedy approved in *People v. Vialpando, supra.* The new provision precluding defense expert testimony unless the defendant cooperates is simply another means to discourage defendants from raising an insanity defense and then refusing to cooperate in the testing process that is necessary to determine the validity of the defense.

*See People v. Bielecki, supra* (a defendant must accept the burdens as well as the benefits that flow from the decision to assert such a defense).

### 3.

■ Defendant also contends that under the present statutory scheme, statements derived from his court-ordered exam were compelled in violation of his due process rights. Specifically, he argues that such statements were involuntarily made because they were elicited by the threat of losing his insanity defense. We disagree.

■ The Fifth Amendment prevents admission of involuntary statements into evidence, regardless of the defendant's custodial situation. *See People v. Medina*, 25 P.3d 1216 (Colo.2001). A statement is involuntary if coercive governmental conduct played a significant role in inducing the statement. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

■ Courts determine whether a statement was voluntary by considering the totality of the circumstances surrounding the statement. When a defendant challenges a statement, the prosecution must establish by a preponderance of the evidence that the statement was voluntarily made, from a free and unconstrained choice by the maker. *See People v. Gennings*, 808 P.2d 839 (Colo.1991).

Here, as previously discussed, defendant could cooperate with the court-ordered examination or lose the ability to call expert witnesses in support of his insanity defense and have the fact of his noncompliance used at trial. *See* § 16–8–106(2)(c). Before the sanity examination took place, the trial court advised defendant of those consequences. Additionally, the CMHIP psychiatrist informed defendant that he was not required to cooperate with the examination. At no time was defendant in danger of sacrificing his insanity defense; he was simply faced with a difficult choice. *See Castro v. People, supra*, 140 Colo. at 505, 346 P.2d at 1026 ("If [defendant] voluntarily elects to exercise the privileges granted by the [insanity] plea he must accept the burdens as well as the benefits which flow from it. One of these burdens is that statements to psychiatrists commissioned by the court will become part of the testimony of the case.").

Hence, defendant was not compelled to make involuntary statements during his court-ordered examination under the present statutory scheme.

### C.

■ Defendant next contends that § 16–8–103.6(2)(a), C.R.S.2003, unconstitutionally forced him to relinquish his privilege against self-incrimination as to communications made to a physician or psychologist. Specifically, he argues that, under the present statutory scheme, he lacked protections to ensure that his waiver applied only to issues regarding the capacity to form the culpable mental state at issue. We disagree.

Section 16–8–103.6(2)(a) concerns waiver of privilege and provides, in pertinent part:

A defendant who places his or her mental condition at issue by pleading not guilty by reason of insanity pursuant to section 16–8–103 ... waives any claim of confidentiality or privilege as to communications made by the defendant to a physician or psychologist in the course of an examination or treatment for such mental condition for the purpose of any trial [or] hearing on the issue of such mental condition.... The court shall order both the prosecutor and the defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who has examined or treated the defendant for such mental condition.

The supreme court has upheld the constitutionality of a very similar version of this provision. *See Gray v. Dist. Court*, 884 P.2d 286 (Colo.1994). In *Gray*, the court held that a defendant's confidentiality rights or privileges do not extend to communications made to physicians or psychologists who are eligible to testify concerning the defendant's mental condition once an insanity defense is raised. It also held that the statutory attorney-client privilege does not extend to communications made to physicians or psychologists who are eligible to testify about a defendant's mental condition.

The court thus concluded that the statute requires disclosure of all information, pre-or post-offense, concerning a defendant's mental condition.

In support of its decision, the court cited legislative history indicating an intention to allow full disclosure of medical and mental health records concerning the mental condition that a defendant places in issue. Full access to such records was found to be necessary in the public interest for the ascertainment of truth. *See Gray v. Dist. Court, supra; People v. Bielecki, supra* (relying upon *Gray* in holding that the waiver did not compromise a defendant's ability to prepare an effective defense).

Defendant contends that the present statutory scheme, adopted subsequent to *Gray* and *Bielecki*, renders those cases and their holdings inapplicable here. He first points to amendments to § 16–8–107. According to defendant, because that statute no longer limits the use of his court-ordered communications to the issue of insanity, the words "mental condition" in § 16–8–103.6(2)(a) may refer to the culpable mental state of the offense at issue, instead of to the capacity to form such a state. For reasons similar to those discussed in our analysis of § 16–8–107 above, we reject this argument. "Mental condition," while not defined in the statute, refers in this context, as the People concede, to *capacity* to form the culpable mental state.

Defendant further argues that the prosecution now has access to a defendant via a court-ordered examination pursuant to § 16–8–106(2)(c). Thus, he asserts the state no longer needs information obtained from other physicians or psychologists, which alleviates the concern expressed in *Gray* that a defendant would not cooperate and the state would then have no way to assess sanity.

However, simply because a defendant is ordered to submit to a sanity exam does not insure that the defendant will cooperate by providing all information relevant to a mental condition. And regardless of a defendant's apparent cooperation, the prosecution still needs access to psychiatric records to evaluate effectively the defendant's insanity claim. *See Hendricks v. People, supra,* 10 P.3d at 1242 ("the evaluating psychiatrist must review all necessary information needed to conduct the examination, which may include traditionally privileged information such as the defendant's records from prior hospitalizations and medical therapies").

Similarly, even if a defendant cooperates, he or she may not be able or willing to do so in a manner sufficient for a proper sanity assessment. The defendant may be unable to recall the events of the offense, or the information a defendant imparts could be inaccurate. Thus, regardless of a defendant's cooperation with a court-ordered examination, there is significant value in thoroughly reviewing a defendant's past mental health history to assess the defendant's capacity to form a culpable mental state at the time of the offense.

Finally, without such information, the assessment of sanity could be incomplete and subject to attack if it is based only upon a defendant's statements made during the exam. An assessment that ignores or cannot be tested against a defendant's prior mental health history has marginal utility.

For these reasons, the basis for the conclusion in *Gray* and *Bielecki* that the waiver provision is valid remains applicable here.

### D.

 Defendant next contends that the unitary trial procedure provided in the insanity statutes violated his right to due process and privilege against self-incrimination in light of the entire statutory scheme described above. We disagree.

Section 16–8–104.5(1), C.R.S.2003, provides for a unitary trial procedure:

> The issues raised by the plea of not guilty by reason of insanity shall be treated as an affirmative defense and shall be tried at the same proceeding and before the same trier of fact as the charges to which not guilty by reason of insanity is offered as a defense.

Colorado courts have consistently held that a single trial on insanity and guilt does not violate a defendant's privilege against self-incrimination. *See Castro v. People, supra; People v. Bielecki, supra.* In *Bielecki,* a

division of this court rejected arguments similar to those defendant makes here. The division held that despite the admission of psychiatric testimony at trial, a unitary trial does not violate a defendant's rights, due in part to the self-incrimination protections included in §§ 16–8–106(2)(b) and 16–8–107(1.5). *See also People v. Freeman,* 47 P.3d 700 (Colo.App.2001)(citing § 16–8–107(1.5)(a) as a provision that protects a defendant's privilege against self-incrimination in a unitary trial); *People v. Tally, supra* (adopting the analysis of *Bielecki* in finding the unitary trial provision constitutional).

Because §§ 16–8–103.6(2)(a), 16–8–106(2)(c), and 16–8–107(1)(a) and (1.5)(a) protect a defendant's privilege against self-incrimination by limiting the use of evidence and do not preclude the insanity defense by requiring cooperation with a court-ordered examination, we conclude the rationale of *Bielecki* remains persuasive, and the unitary trial procedure is constitutional.

We therefore reject defendant's additional contention that the trial court erred in denying his motion to bifurcate the insanity determination from the trial on the first degree murder charge.

## II.

Defendant next contends that the trial court erred when it permitted evidence obtained from his court-ordered examination to be used to prove his guilt. Specifically, he argues that his due process rights and privilege against self-incrimination were violated when portions of the CMHIP psychiatrist's testimony were improperly admitted and used. We agree.

The CMHIP psychiatrist stated in his report to the court concerning the sanity exam that defendant had the capacity to form a culpable mental state. He further opined that defendant had acted "with some degree of deliberation and ... with specific intent" during the stabbing.

Defendant filed a motion in limine before trial in which he sought to preclude the CMHIP psychiatrist from opining to the jury concerning actual deliberation and intent, asserting that he could not testify to those ultimate guilt issues. The court held a hearing outside the jury's presence just before the psychiatrist testified. During that hearing, the prosecutor asserted that the jury could use the psychiatrist's testimony "for intent or deliberation or the sanity issues." The court determined to allow the witness to offer opinions as to "defendant's plea of not guilty by reason of insanity."

After the witness was qualified as an expert, the court gave a limiting instruction:

[A]ny evidence you are about to hear that was acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of the court-ordered sanity examination ... [may] be considered only as to the issues raised by the defendant's plea of insanity, and you should consider it as evidence for no other purpose.

Thereafter, the CMHIP psychiatrist testified to a number of statements defendant made to him and opined that defendant did not suffer from a mental disease or defect that would have prevented him from acting intentionally or after deliberation. Following defense counsel's objection that such information went beyond the sanity issues, he thereafter testified:

After [defendant] got so angry at his father and made the decision to take his father's life, he actually went to the garage and retrieved a large knife with which he inflicted the fatal wounds. I am not going to say that [defendant] had premeditated the murder for a lengthy period of time, like I am not saying he planned to kill his father the day before ... I don't think he deliberated this very long. I think he did deliberate it. I think there was a period of at least two minutes between the time he made up his mind to act and the time he actually acted and took his father's life.

The witness further stated, without objection, that defendant was "basically trying to inflict lethal wounds," that "he knew what he was doing and he did what he was trying to do," and that defendant "had a lethal intent." The witness said, "At that moment, anyway,

I think he intended to kill his dad." He later added, again without objection:

I think the defendant had a goal, and that goal was to harm or inflict a fatal injury on his father based upon this very long record of hostility and antipathy between the father and the son. I think it all came to a head on that particular night. I don't think his intention was to harm other members of the family ... I think the intention was to harm his father.

As previously noted, and as conceded by the People, § 16–8–107(1)(a) and (1.5)(a) limit the admissibility of evidence acquired for the first time from defendant's mental processes during the court-ordered examination to issues involving his capacity to form a culpable mental state. Thus, such evidence may not be employed by the psychiatrist to opine on defendant's guilt of the offense at issue.

▆▆▆ In our view, the recited evidence impermissibly related to defendant's guilt of the substantive offense. Some of this evidence, such as defendant's own communications to the psychiatrist and the psychological testing, was acquired for the first time during the court-ordered examination and thus was admissible at trial only as to insanity issues pursuant to § 16–8–107(1.5)(a). Because the psychiatrist's statements related to defendant's culpability, and were not limited to his capacity to form the mental state at issue, they were erroneously admitted.

We do not perceive that the testimony related to defendant's intent and deliberation was employed only to demonstrate defendant's capacity to form the culpable mental states at issue. Testimony that a defendant acted with specific intent and after deliberation necessarily presupposes an opinion that he or she had the capacity to form such a culpable mental state. But if this evidence must be limited to capacity, as the People acknowledge it must, opinions from this witness that defendant actually formed those mental states here necessarily relate to guilt of the substantive offense.

▆▆▆ The People assert that we should apply plain error analysis because, except as noted above, defense counsel did not object to this testimony. And the People also point out that the prosecutor's questions did not seek opinions in the prohibited areas. However, defendant's motion in limine and his objection during trial were sufficient to preserve the issue for review. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986)(specific objections made in motion in limine to specific items of anticipated evidence satisfy the purposes of the contemporaneous objection rule). Further, given the prosecutor's contention that the psychiatrist could render opinions on the substantive culpability issues relevant to guilt, the phraseology of the questioning is not determinative.

The People also assert that any error is harmless beyond a reasonable doubt. We disagree.

▆▆▆ Errors in the admission of evidence, even of constitutional dimension, do not require reversal of a criminal conviction if the errors are harmless beyond a reasonable doubt. Under a constitutional harmless error standard, reversal is required unless the court is confident beyond a reasonable doubt that the defendant was not prejudiced by the error. *See Blecha v. People*, 962 P.2d 931 (Colo.1998).

▆▆▆ The constitutional harmless error test is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Bernal v. People*, 44 P.3d 184 (Colo.2002).

▆▆▆ To determine whether such an error is harmless, an appellate court must examine the facts of the case to determine whether the error affected its outcome. *Topping v. People*, 793 P.2d 1168 (Colo.1990). In making that determination, we consider the entire record, including the jury instructions and the evidence and arguments presented at trial. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *People v. Harlan*, 8 P.3d 448 (Colo.2000).

▆▆▆ Here, the People point out that the trial court gave a proper instruction to the jury regarding the admissibility and use of the CMHIP psychiatrist's testimony before he testified as to defendant's communica-

tions, an instruction repeated in the closing instructions. They also assert that other information concerning defendant's intent and deliberation was not first acquired during the sanity exam, and the quantum of properly admitted evidence was of such significance that we may be confident beyond a reasonable doubt that the jury's determination was surely unattributable to the error. The People rely upon the following evidence.

Defendant's brother and mother, both of whom witnessed most of the offense, testified to defendant's demeanor, his actions, and the events subsequent to the offense. The mother described how, before the offense, the victim told defendant, as he had done regularly in the past, that he was lazy and needed to get a job, whereupon defendant was silent in response. She also indicated the victim's verbal admonition took place somewhere between 8 p.m. and 10 p.m., and the knock on the bedroom door before the stabbing took place around midnight. Additionally, defendant's brother said he chased defendant down the street after the offense.

The two arresting officers testified at trial to defendant's voluntary confession in which he acknowledged he had an argument with his father, who exhibited anger at defendant for not working, after which defendant went to the garage, got a knife, and stabbed his father. He also told the officers that he felt bad about the stabbing.

Duly authenticated photographs were admitted depicting knives in the kitchen, which indicated that defendant bypassed a convenient choice of weapons in favor of another knife in the detached garage. The sheath that had held defendant's weapon was found under some of defendant's papers in a closed desk drawer in the garage.

However, the CMHIP psychiatrist was the only witness who rendered an opinion that defendant acted with specific intent and after deliberation. Defendant's own expert testified that defendant did not have the capacity to form intent and act after deliberation. And in the closing argument, the prosecutor extensively used the psychiatrist's testimony to argue that guilt on the substantive offense had been established. The prosecutor stated:

Would you want to know if the person accused of the murder made any statements about their intention? Well, of course you would. Your common sense tells you that, and what statement did the defendant make to [the CMHIP psychiatrist]? Quote: "I was so mad I wanted to kill him," end quote. That's pretty powerful evidence of intention, isn't it?

How about deliberation? Do you have that in this case beyond a reasonable doubt? ... Well, what did the defendant's own statements tell you about deliberation? A defendant who was in a psychotic state ... does this sound like it? Quote this is from [the psychiatrist's] testimony: "... Dad was really mad at me when I got home that night ... I got so mad and nervous I didn't have no place to go. I couldn't control myself." And you can read that I couldn't control my anger. I couldn't control my temper. "I went to the garage and got the knife after he started in on me." ... And isn't it interesting that he closed the drawer after himself after he took the knife out of the sheath? All of those showed deliberation. Deliberate acts. Acts after reflection and judgment.

While discussing the limiting instruction on the CMHIP psychiatrist's testimony, the prosecutor also argued to the jury that it could not use the psychiatrist's testimony to prove identity, venue, or cause of death, but "you can and should and I think, and the instructions tell you, you must use his testimony in evaluating the defendant's culpable mental state 'after deliberation' and 'with intent' and the issue of sanity as it relates to the issue of sanity."

The prosecution's references to this testimony were not isolated, and they intermingled proper and improper use of such evidence. And although there was independent evidence of defendant's premeditation and planning, the expert testimony as to defendant's mental state and sanity at the time of the shooting was contradictory, given testimony by defendant's expert that he lacked capacity to form intent and to deliberate. Even with the appropriate limiting instruction given to the jury, we cannot say with fair

assurance that the prosecution's improper use of this evidence did not influence the jury's verdict. *See People v. Rodgers,* 756 P.2d 980 (Colo.1988)(if there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt). Consequently, we must reverse defendant's conviction and remand for a new trial. *See People v. Cobb,* 962 P.2d 944 (Colo.1998)(when error is of constitutional dimension and not harmless beyond a reasonable doubt, defendant's conviction must be reversed).

### III.

■ Because it will likely arise on retrial, we address defendant's remaining contention that the trial court infringed upon his constitutional right of confrontation by prohibiting cross-examination of the CMHIP psychiatrist regarding his treatment of another patient. Specifically, defendant asserts that the expert erroneously dismissed defendant's previous diagnoses of psychotic behavior because they were based upon his self-reports of symptoms. Thus, to challenge the psychiatrist's credibility and expertise, defendant sought to cross-examine him regarding another case in which he allegedly disregarded the patient's self-reports prior to the patient's suicide. We agree with the trial court's ruling that this line of inquiry was irrelevant.

■ The right of a defendant to confront adverse witnesses is guaranteed by the Sixth and Fourteenth Amendments and includes an opportunity for effective cross-examination. *See Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Merritt v. People,* 842 P.2d 162 (Colo.1992). Nevertheless, effective cross-examination does not mean unlimited cross-examination. *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)(Sixth Amendment guarantees a defendant an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish). The trial court has discretion to place reasonable limits on cross-examination based on concerns about such factors as harassment, prejudice, confusion of the issues, or interrogation that would be repetitive or only marginally relevant. *See Olden v. Kentucky, supra; Merritt v. People, supra.* Absent a showing of abuse of discretion or manifest prejudice, limitation of cross-examination does not constitute reversible error. *People v. Saiz,* 32 P.3d 441 (Colo. 2001).

Here, the record does not reveal that the psychiatrist disregarded defendant's self-reports. In fact, he identified defendant's previous mental history but then explained why he did not perceive that evidence would support a diagnosis of schizophrenia. Further, he acknowledged that portions of defendant's mental health records showed some evidence of psychosis, but explained that self-reports can exaggerate, and hence caution should be exercised in relying upon them. Under these circumstances, we do not perceive that evidence regarding the psychiatrist's former patient would have been relevant to show that his opinion in this case was inaccurate or biased.

Moreover, allowing cross-examination regarding such evidence would have correspondingly allowed the prosecution, in rebuttal, to present information regarding the psychiatrist's successful treatment of other patients. Such admissions may have resulted in a significant amount of collateral testimony.

Finally, defendant was given ample opportunity to challenge the psychiatrist's credibility and expertise during cross-examination. Defense counsel extensively questioned him on a number of topics, from the methodology of his clinical interviews with defendant and the particularities of the resulting sanity evaluation to his prior testimony in other insanity trials. In fact, counsel asked several questions about the previous patient before the prosecution's objection was sustained.

Therefore, defendant's confrontation rights were not impermissibly infringed.

The judgment is reversed, and the case is remanded for a new trial in accordance with the views expressed in this opinion.

Judge PICCONE concurs.

Judge ROY specially concurs.

Judge ROY specially concurring.

I concur in the majority's result and rationale with respect to unitary trials. I write separately to express a concern about the conflict between a unitary trial and a defendant's right against self-incrimination. The linchpin of the majority opinion is the presumption that juries follow the trial court's limiting instructions. While I repose considerable confidence in juries, I am concerned that the protection of fundamental constitutional rights is ultimately entrusted to juries whose conduct with respect to those rights is not subject to reasonable challenge or review.

My concerns were summarized by a division of the Missouri Court of Appeals in a case applying a statute similar to ours:

> Implicit in the posture of the prosecution is the contention that the procedure required by [the statute] for an oral instruction concurrently with the admission of the inculpatory statements and the formal instruction at submission of the case insures that the jury will confine consideration of the evidence to the issue of the mental state of the accused and not to guilt, and so vouchsafes the constitutional right against self-incrimination. *That assumes an ability for fairness to tax even the most earnest jury.*

*State v. McGautha,* 617 S.W.2d 554, 561 (Mo.Ct.App.1981)(emphasis added). *But see State v. Ohmes,* 675 S.W.2d 681 (Mo.Ct.App. 1984).

The presumption that the jury followed the court's instructions and the limitations on review of the jury's deliberations, CRE 606, are intended to assure the finality of the judgment, not to assure that a defendant's fundamental constitutional rights have been respected and preserved. Indeed, while it may be theoretically possible, it is practically impossible to verify that those rights were respected and preserved. And in a case in which the evidence of guilt is weak and a verdict of guilty is returned, it would, in my view, be likely that the defendant's rights were not respected or preserved.