In re the MARRIAGE OF Melodee IKELER, n/k/a Melodee Crawford, Appellant and Cross–Appellee,

and

Douglas E. Ikeler, Appellee and Cross–Appellant.

No. 05CA0649.

Colorado Court of Appeals, Div. A.

Aug. 24, 2006.

Certiorari Granted Dec. 18, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Willoughby Law Firm, LLC, John L. Eckelberry, Denver, Colorado, for Appellant and Cross–Appellee.

Loper & Virnich, P.C., Sean H. Virnich, Denver, Colorado, for Appellee and Cross–Appellant.

Opinion by Judge PLANK.*

Melodee Ikeler (wife) and Douglas E. Ikeler (husband) separately appeal from the permanent dissolution orders. We affirm in part, reverse in part, and remand with directions.

Before husband and wife were married, they entered into an antenuptial agreement (the marital agreement). As pertinent here, the parties agreed that each would pay his or her own attorney fees in any dissolution or separation proceeding.

Fifteen months after the marriage, the parties had triplets. Two years later, wife petitioned to dissolve the marriage.

Husband moved for summary judgment on the issue of attorney fees, asserting the marital agreement barred any attorney fee award. The court denied the motion.

After a hearing at which husband represented himself, the court issued permanent orders. As relevant to the issues here, the trial court allowed wife to use a vehicle for six years that was husband's separate property; designated wife to be the primary custodian of the children; ordered husband to pay wife monthly child support in the amount of $6620, including a calculation that wife would pay for child care in the amount of $3000 per month; and awarded wife attorney fees. Both parties appeal.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

## I. Vehicle

Both parties contend the court erred by allowing wife to use for six years a vehicle that is husband's separate property. We conclude that on remand the duration of wife's use of the vehicle must be reconsidered or other provisions must be made for her transportation needs.

### A.

■ Wife asserts the court erred by not conveying to her any definable or ascertainable attributes of ownership in the vehicle. We disagree.

■ Pursuant to § 14–10–113(1), C.R.S. 2005, "the court shall set apart to each spouse his or her property." *In re Marriage of Sarvis,* 695 P.2d 772 (Colo.App.1984). Thus, the statute mandates that separate property remain separate. *In re Marriage of Campbell,* 43 Colo.App. 72, 599 P.2d 275 (1979).

Here, there is no dispute that the vehicle is husband's separate property. Thus, the court could not have conveyed any ownership attributes of that vehicle to wife. *See In re Marriage of Campbell, supra.* Wife's citations to *In re Marriage of Paul,* 821 P.2d 925 (Colo.App.1991), and *In re Marriage of Gehret,* 41 Colo.App. 162, 580 P.2d 1275 (1978), do not compel a contrary conclusion, as in each case, the issue was the division of marital, not separate, property. Wife has not shown the court erred when it did not give her any ownership interest in the vehicle.

However, notwithstanding the fact that the vehicle is husband's separate property, the court could allow wife to use it because husband could waive or intentionally relinquish the right to sole ownership of his separate property.

The court's finding here that husband consented or waived his objection to wife's use of his separate property is supported by the record. The court asked husband whether he would prefer to pay wife a lump sum to purchase a vehicle or allow her to use the vehicle at issue here. Husband testified he could not afford to give wife a lump sum to purchase a vehicle and agreed she could borrow the vehicle for one year or some amount of time. Whether a waiver occurred is a question of fact, and a trial court's resolution of the issue of waiver will not be reversed on appeal unless it is clearly erroneous. *In re Marriage of Robbins,* 8 P.3d 625 (Colo.App. 2000). The court acted properly by allowing wife to use the vehicle without conferring any rights of ownership to her.

### B.

■ Husband contends the court erred by awarding use of the vehicle to wife for six years. We agree.

Husband testified wife could borrow the vehicle for "a year or some amount of time." The record shows that husband did not consent to wife's using the vehicle for six years. Thus, although the court could properly have allowed wife to use the vehicle for one year, it could not do so for six years.

We recognize that the court was attempting to address the transportation needs of wife and the triplets while simultaneously accommodating husband's request that he not be ordered to pay a lump sum to wife to allow her to purchase a vehicle. Regardless, remand is required for the court to consider whether wife should receive money to purchase a vehicle in which she may transport three toddlers or whether husband will consent to wife's use of his automobile for a longer period of time.

### C.

Husband argues that because the trial court awarded the use of the vehicle to wife in lieu of additional maintenance, the court should have characterized the loan payments husband was making on the vehicle as maintenance. However, in light of our conclusion that the court erred in allowing wife to use the vehicle for six years, we need not reach this issue. If, on remand, the court enters a similar order because husband consents to wife's using the vehicle for a longer period of time, the trial court should address this issue.

## II. Child Support

We agree with husband that certain aspects of the child support award must be reconsidered on remand.

## A.

▮ Husband asserts the court erred by including wife's child care expenses in the calculation of child support because those expenses were not incurred due to employment, job search, or education. Although we disagree with husband's assertion that the court was not allowed to include child care, we agree that the findings are inadequate to support the order.

Pursuant to § 14–10–115(11)(a), C.R.S. 2005, "[n]et child care costs incurred on behalf of the children due to employment or job search or the education of either parent shall be added to the basic obligation and shall be divided between the parents in proportion to their adjusted gross incomes."

Wife testified that taking care of the three-year-old triplets was a full-time job. Wife's counsel indicated wife wanted to take care of the children fulltime until they were in first grade, which would occur in fall 2007. Thus, the evidence shows wife was not employed or seeking employment. The trial court found that wife was not working outside the home.

Wife argues the court allowed child care costs as part of the child support calculator because she was in school. The record does not support that argument. Although wife testified she wanted to attend a one-year continuing education program in public speaking, she did not indicate when she would begin that program. The logical inference to draw from wife's counsel's statement is that wife did not intend to attend that program until 2007. Thus, because wife was not working, seeking employment, or attending school, the child care costs ordered by the court in calculating child support does not fall within the scope of § 14–10–115(11)(a).

▮ However, even though the court could not award child care under § 14–10–115(11)(a), the court could deviate from the child support guidelines if their application would be inequitable, unjust, or inappropriate, such as when there are extraordinary costs associated with parenting time. *See* § 14–10–115(3)(a), C.R.S.2005; *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997); *In re Marriage of Kluver*, 771 P.2d 34 (Colo.

App.1989) (trial court may require one parent to assist in paying certain costs for a child not authorized by statute if it finds that the application of the guidelines would be inequitable and specifies the reason for the deviation). The court also may deviate from the guidelines even if no enumerated factor exists. Section 14–10–115(3)(a). Any such deviation shall be accompanied by specific factual findings by the court specifying the reasons for the deviation. *In re Marriage of English*, 757 P.2d 1130 (Colo.App.1988).

Here, the parties had triplets, who would be three years old in April 2005. Wife testified that she was unable to take them with her to the grocery store, to therapy, go on other errands and thus it was reasonable for her to have babysitters for twenty to twenty-five hours per week to allow her to accomplish these tasks. Taking care of three-year-old triplets may be extraordinary circumstances justifying a deviation from the guidelines.

However, the trial court could not deviate from the guidelines unless it made specific factual findings justifying such a deviation. Because it did not do so, it erred. *See In re Marriage of English, supra.* On remand, the trial court is directed to determine whether child care costs are appropriate and to make findings to support any deviation from the guidelines. *See In re Marriage of Payan*, 890 P.2d 264 (Colo.App.1995).

Our conclusion is not altered by husband's citation to *In re Marriage of Mackey*, 940 P.2d 1112 (Colo.App.1997). There, a division of this court held "it was error for the trial court to offset imputed income with imputed child care costs" because "requir[ing] the obligor to be responsible for costs that are not actually incurred and which are speculative in nature seems patently unfair." *In re Marriage of Mackey, supra*, 940 P.2d at 1115 (quoting Colorado Child Support Commission Report 15 (1991) ). Here, the undisputed testimony showed that wife was actually incurring child care costs. Thus, *Mackey* is inapplicable.

## B.

▮ Husband asserts the trial court erred by ordering $3000 monthly for child care

expense as part of the child support calculation because that amount was unsupported by the evidence. We reach this argument because an appropriate amount of child care will be at issue on remand. We agree with husband that the order is unsupported by the evidence.

■■■ Child care costs shall not exceed the level required to provide quality care from a licensed source. *In re Marriage of Finer,* 920 P.2d 325 (Colo.App.1996). Only those costs actually incurred may be considered in the support calculation. *In Interest of A.M.D.,* 56 P.3d 1184 (Colo.App.2002), *rev'd on other grounds,* 78 P.3d 741 (Colo. 2003).

Here, the court ordered husband to pay $6620 in child support, which included $3000 for child care. The testimony does not show wife was incurring $3000 in child care per month. Wife testified nannies charged from $13 to $16 per hour and it was reasonable for her to have nannies between twenty and twenty-five hours per week to allow her to go grocery shopping, attend therapy, and have some free time for herself. Thus, assuming wife had to hire a nanny at $16 per hour for twenty-five hours per week, the monthly cost for child care would be $1733. The other evidence was from wife's expert, who testified wife's child care costs were $48,000 per year until the children were in school full time. However, his figures were based on thirty hours per week at $15 per hour, which equals $23,400 per year or $1950 per month. Thus the evidence does not show wife was incurring $3000 per month in child care.

Because the evidence does not support the conclusion that $3000 was a reasonable amount of monthly child care costs, we agree that the order cannot stand. If on remand the court makes adequate findings supporting an award of child care, it must reconsider what amount is reasonable, based on the amount wife is actually expending for those costs and taking testimony about the parties' current circumstances if necessary. *See In Interest of A.M.D., supra.*

## C.

■■■ For the first time on appeal, husband asserts the trial court erred by not, in essence, making a sua sponte inclusion of his prior obligation to a child from a previous marriage in the calculation of child support pursuant to § 14–10–115(7)(d), C.R.S.2005. We disagree.

Under § 14–10–115(7)(d), the amount of child support "actually paid" by a parent with an order for support of other children shall be deducted from that parent's gross income. *In re K.M.T.,* 33 P.3d 1276 (Colo.App.2001). Thus, husband is entitled to a deduction in his gross income for purposes of child support for only such amounts as he actually paid. *See In re Marriage of Dickson,* 983 P.2d 44 (Colo.App.1998); *In re Marriage of Eze,* 856 P.2d 75 (Colo.App.1993).

Husband testified he had been ordered to pay child support in another dissolution proceeding in the amount of $1782 per month. That amount is reflected in husband's financial affidavit. However, he also testified that because that child's mother had terminated his visitation, he had not paid that support since March 2004, more than nine months before the hearing in this case. Although he testified that "the matter is being resolved," he offered no evidence that he was actually paying child support at the time of the hearing. Thus, the court acted properly by not including that amount on the child support worksheet.

We conclude that the court did not err by not sua sponte considering § 14–10–115(7)(d). *See In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997). However, because we remand this matter to the trial court to address an appropriate amount of child care costs, husband may raise this issue in the trial court on remand.

## III. Adequate Security

Wife asserts the trial court erred by not giving her adequate security for the child support and spousal maintenance awards. Husband argues that the amount of adequate security depends on the amount of child support the court will order on remand. We agree that, in light of our remand, we need not address whether the security was adequate because its adequacy depends on the

amount of child support, which remains at issue.

## IV. Attorney Fees

■ Husband asserts the trial court erred by denying his motion for summary judgment and by awarding wife attorney fees because wife had agreed in an enforceable marital agreement to be responsible for her own fees and the court could not review the agreement for unconscionability. Specifically, he argues that pursuant to § 14–2–307(2), C.R.S.2005, the court may not conclude that a marital agreement in which each party has agreed to pay his or her own attorney fees is unconscionable and therefore award fees. We agree.

Section 14–2–307(2) provides:

A marital agreement or amendment thereto or revocation thereof that is otherwise enforceable after applying the provisions of subsection (1) of this section is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement, amendment, or revocation relate to the determination, modification, or elimination of spousal maintenance and such provisions are unconscionable at the time of enforcement of such provisions.

■ Our task in construing statutes, which we review de novo, is to give effect to the intent of the General Assembly and its chosen legislative scheme, looking first to the plain language. If the statute is clear and unambiguous on its face, we will apply the statute as written because we presume the General Assembly meant what it said. *In re Marriage of Chalat*, 112 P.3d 47 (Colo.2005). If the clear intent of the General Assembly appears with reasonable certainty, we need not resort to other rules of statutory construction. *Riley v. People*, 104 P.3d 218 (Colo.2004).

Here, the language of the statute is plain. It states that an otherwise enforceable marital agreement is unenforceable "insofar, but only insofar, as the provisions of [the agreement] relate to ... spousal maintenance." Section 14–2–307(2). Thus, the statute plainly indicates that the only provision in a marital agreement that may be reviewed for unconscionability is maintenance.

Wife argues that *In re Marriage of Dechant*, 867 P.2d 193 (Colo.App.1993), allows the court to award attorney fees. However, that case was decided under the prior statutory scheme and did not analyze the issue before us.

We conclude the court erred in denying husband's motion for summary judgment and by awarding wife attorney fees.

## V. Cross–Examination

■ Husband argues the court erred by denying his right to cross-examine wife fully and fairly. Specifically, he contends he was denied effective cross-examination because the trial court pressured him to conclude his cross-examination quickly and prematurely, changed several questions he attempted to ask, repeatedly interrupted, and altered answers provided by wife. We disagree.

■ Cross-examination is a fundamental right. *Denver Symphony Ass'n v. Indus. Comm'n*, 34 Colo.App. 343, 526 P.2d 685 (1974). However, effective cross-examination does not mean unlimited cross-examination. *People v. Herrera*, 87 P.3d 240 (Colo.App. 2003). Thus, it may be restricted. *Denver Symphony Ass'n v. Indus. Comm'n, supra.*

■ A trial court may place reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant. *People v. Ray*, 109 P.3d 996 (Colo.App.2004). Reasonable limitations on cross-examination do not violate constitutional protections, especially if the cross-examination is repetitious and nonproductive. *Costiphx Enters., Inc. v. City of Lakewood*, 728 P.2d 358 (Colo. App.1986).

■ Absent a showing of abuse of discretion or "manifest prejudice," limitation of cross-examination does not constitute reversible error. *People v. Herrera, supra.* We will reverse only where the restriction is severe enough to constitute a denial of the right. *Denver Symphony Ass'n v. Indus. Comm'n, supra.*

Our review of the record does not support husband's claim that he was denied effective cross-examination of wife. He was allowed adequate time to cross-examine wife and was not pressured by the court to conclude his examination.

Moreover, husband has not articulated how he was manifestly prejudiced by the court's actions, which he must do to obtain reversal. *See People v. Herrera, supra.* He agreed he would ask his questions to the court and the court would relay the questions to wife. He asked wife questions on a plethora of subjects.

Husband also complains that his questions and wife's answers were rephrased by the court. Although the record shows the court did so on occasion, our review of the record shows that the rephrasing was minimal and was done to minimize conflict between the parties. Further, husband never objected that any rephrased questions were inaccurate, and wife never stated that the rephrased answers were incorrect. Husband has not established he was prejudiced by the court's actions.

The portions of the permanent orders allowing wife to use the vehicle for six years, awarding child care costs, and awarding attorney fees are reversed. The case is remanded to the trial court for further proceedings consistent with this opinion, including the following rulings. On remand, the court is directed to consider whether wife may continue her use of the vehicle or whether it should make other provisions for her to purchase a vehicle. The court must also make factual findings justifying any deviation from the child support guidelines, and if it makes findings that child care is appropriate, it must determine an appropriate amount of child care expenses. Until a new child support order is entered on remand, the existing order shall remain in effect. The remainder of the permanent orders is affirmed.

Justice ROVIRA *, concurs.

Chief Judge DAVIDSON, specially concurs.

Chief Judge DAVIDSON specially concurring.

I concur in Parts I, II, III, and V of the majority opinion. I also concur in the majority's conclusion in Part IV that the plain language of § 14–2–307(2), C.R.S.2005, of the Colorado Marital Agreement Act provides that the only provision in a marital agreement that may be reviewed for unconscionability is maintenance. Thus, I agree that § 14–2–307(2) does not state that a marital agreement in which each party has agreed to pay his or her own attorney fees may be reviewed for unconscionability. I write separately to raise the question whether the General Assembly intended that the Act be applied to prohibit an award of at least some attorney fees in permanent orders disputes, such as here, when there has been significant litigation relating to the parties' children.

Generally, under principles of freedom of contract, a marital agreement may contain a waiver of attorney fees. *See, e.g., In re Marriage of Christen,* 899 P.2d 339 (Colo.App.1995)(enforcing provision of marital agreement awarding attorney fees to prevailing party). The Act sets forth what the parties may contract about in a marital agreement, such as property division and maintenance. The Act makes no mention of attorney fees. Courts in other states that have enacted versions of the Act generally agree, however, that waivers of attorney fees in prenuptial agreements are generally enforceable. *See, e.g., Hardee v. Hardee,* 355 S.C. 382, 585 S.E.2d 501 (App.2002).

The General Assembly has also provided in a different section of the Act that a marital agreement "may not adversely affect the right of a child to child support." Section 14–2–304(3), C.R.S.2005. That part of the Act means, for example, that any agreement of the parties as to child support to be awarded in the event of dissolution would be unenforceable to the extent it adversely affected the child's rights. That also necessarily prohibits any agreed upon restriction of either party's right to seek child support, or to litigate related issues such as parenting time or parenting responsibilities. *See In re Marriage of Chalat,* 112 P.3d 47, 53 (Colo. 2005) ("[T]he law and policy of this state [is]

that the needs of the children are of paramount importance.") (quoting *In re Marriage of Miller,* 790 P.2d 890, 892 (Colo.App.1990)); *In re Marriage of Micaletti,* 796 P.2d 54 (Colo.App.1990) (parents may not, by agreement, adversely affect their children's best interests).

The General Assembly has also explicitly recognized that attorney fees are a necessary component of litigation in dissolution proceedings. *See* § 14–10–119, C.R.S.2005 (allowing the dissolution court from time to time during the litigation to award attorney fees to enable a party to afford the expenses of litigation); *In re Marriage of Rose,* 134 P.3d 559 (Colo.App.2006) (award of attorney fees mitigates the potential harm to the parties' children caused by the dissolution of marriage); *see also In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997) (attorney fee awards ensure that neither party to a dissolution action suffers undue economic hardship as a result of the proceedings); *In re Marriage of Mitchell,* 195 Colo. 399, 579 P.2d 613 (1978) (same), *disapproved on other grounds by In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987); *In re Marriage of Page,* 70 P.3d 579 (Colo.App.2003) (same).

Conversely, the absence of an award of attorney fees or even the possibility of an award can inhibit the ability of one spouse to litigate in a dissolution action issues relating to child support and other issues concerning the parties' children. *See In re Marriage of Rose, supra,* 134 P.3d at 562 (interpreting § 14–10–119 to conclude that courts have authority to advance prospective attorney fees and costs during dissolution proceedings); *In re Marriage of Mockelmann,* 944 P.2d 670 (Colo.App.1997) (award of attorney fees at temporary orders necessary to continue litigation); *In re Marriage of Lee,* 781 P.2d 102 (Colo.App.1989) (advance of litigation costs allowed spouse to maintain litigation).

This body of law reflects consistently and clearly expressed legislative policy enacted by the General Assembly and applied by the courts to protect the rights of children in dissolution cases. I find it difficult, then, to reconcile these unambiguous statements of public policy with the equally unambiguous language of § 14–2–307(2), which, by negative implication, prohibits review of a waiver of attorney fees in a marital agreement even as it relates to litigation of the needs of the parties' children.

Nevertheless, I agree with the majority that, because it is plain, we are bound by the statutory language. If the General Assembly means to allow courts to award attorney fees in dissolution proceedings when children's issues are involved regardless of a prior waiver of fees in a marital agreement, it is for that body, not this court, expressly to say so. *See Kallenberger v. Buchanan,* 649 P.2d 314 (Colo.1982) (courts do not approve or disapprove of the wisdom of legislative decisions or the desirability of legislative acts); *cf. In re Marriage of Burke,* 96 Wash.App. 474, 980 P.2d 265 (1999) (contractual right of parties to waive attorney fees in marital agreement must yield to special rules formulated by the legislature and the courts to protect the children's needs in dissolution proceedings).