In re the MARRIAGE OF Amy CONNERTON, Appellant,

and

Sean NEVIN, Appellee.

No. 09CA1642.

Colorado Court of Appeals, Div. IV.

Sept. 16, 2010.

Anne Whalen Gill, L.L.C., Anne Whalen Gill, Sharlene J. Aitken, Castle Rock, Colorado, for Appellant.

Garfield & Hecht, P.C., Robert E. Kendig, Aspen, Colorado, for Appellee.

Opinion by Judge DAILEY.

In this post-dissolution of marriage proceeding between Amy Connerton (mother) and Sean Nevin (father), mother appeals the trial court's order modifying child support and imputing income to her based on its conclusion that she was voluntarily unemployed. Mother also appeals the court's order denying her C.R.C.P. 59 motion. We affirm in part, reverse in part, and remand the case for further proceedings.

## I. Background

The parties' marriage was dissolved in 2006. On March 22, 2006, the trial court entered permanent orders, requiring father to pay $2,280 per month in maintenance through May 1, 2008, and $654 per month in child support for the parties' two children.

On August 13, 2008, mother moved the court to modify child support, arguing that the termination of maintenance resulted in a change in father's child support obligation of more than ten percent. At the time, the children were three and five years old. Mother requested her attorney fees under section 14–10–119, C.R.S.2009.

Father responded, arguing that he had voluntarily paid additional child support since maintenance had terminated and that moth-

er, who was a licensed real estate agent and an emergency medical technician (EMT), was voluntarily unemployed.

After a hearing, the trial court modified its support order, requiring father to pay $1,609 per month in child support. In making its determination, the court concluded that mother was voluntarily unemployed and imputed income of $3,010 per month to her based on potential full-time employment as an EMT. The court found that, although mother's educational goal of becoming a registered nurse was "admirable," it did not meet the standard of reasonableness under section 14–10–115(5)(b)(III)(C), C.R.S.2009, because the educational program would take "about four and a half years from the date of the hearing," when the oldest child would be "more than half way through her child support years." The court noted that mother did not pursue her nursing degree while she was receiving maintenance. The court further found that mother had substantial job skills, because she was a licensed real estate broker, was qualified to work as an EMT, and had several certifications related to health and emergency care. The court denied mother's request for attorney fees, finding that the evidence at the hearing was insufficient to determine the reasonableness and necessity of the fees incurred by her in any particular amount.

Mother filed a verified C.R.C.P. 59 motion, correcting her hearing testimony to reflect that she would complete the nursing degree one year earlier and arguing that (1) section 14–10–115(5)(b)(III)(C) does not require a parent to pursue an educational goal while she receives maintenance; (2) there was no evidence in the record to support the court's finding that her educational goal was not reasonable; and (3) the court erred in denying her request for attorney fees because the parties stipulated that her attorney's rate was reasonable and she testified that she had paid $16,000 to her attorney at the time of the hearing. Mother's counsel filed an affidavit of attorney fees along with the motion.

The trial court denied mother's motion, finding that it did not "suggest [m]other should have been pursuing her education" during the time when her children were less than thirty months old [1] but that her "choice not to pursue her education[al] goals at a time when, based on the evidence presented at the hearing, she could have done so was a factor in the reasonableness of the time period necessary for [her] to complete her education and obtain a higher income." The court further found that "[m]other ha[d] significant job skills and income potential with her present abilities" and that "[p]ursuit of her education[al] goals would delay any income for a significant period of time."

## II. Voluntary Unemployment

Mother contends that the trial court erred in finding that she could not complete the nursing degree within a reasonable time because (1) the length of the program was reasonable; and (2) she began the program at a reasonable time given the children's very young ages at the time of the dissolution, the overlap between the period of maintenance awarded and the thirty-month milestone for imputation of income, the youngest child's illness, the need to foster a relationship between father and the youngest child to establish overnights, and her move to Glenwood Springs to be closer to the children's school. Mother further argues that the court's ruling "penalized her effort at self-sufficiency" and was "contrary to the public policy of encouraging [her] financial independence."

We agree that the trial court erred in finding that four and a half years was not a reasonable time to complete a registered nursing degree. However, because the court did not determine whether mother pursued the degree in good faith or whether her pursuit of the degree unreasonably reduced the support available to the children, we remand the case for the court to make those determinations.

### A. Standard of Review

Whether a parent is voluntarily unemployed or underemployed "requires the

---

1. The court is referring to the exception to the imputation of income under section 14–10–115(5)(b)(I), C.R.S.2009, which applies when a

parent "is caring for a child under the age of thirty months for whom the parents owe a joint legal responsibility."

trial court to make factual findings and apply a legal standard to those findings." *People v. Martinez*, 70 P.3d 474, 476–77 (Colo.2003). We give deference to the court's findings of fact but review de novo its application of governing legal standards and legal conclusions. *See id.* at 476; *City of Colorado Springs v. Andersen Mahon Enterprises, LLP*, 260 P.3d 29, —— (Colo.App.2010).

## B. Governing Law

■ "[B]oth parents have a duty to support their children." *Martinez*, 70 P.3d at 477; *see also In re Marriage of Mackey*, 940 P.2d 1112, 1114 (Colo.App.1997). Thus, a trial court may calculate child support based on a parent's potential income if the parent is voluntarily unemployed or underemployed. *See* § 14–10–115(5)(b)(I), C.R.S.2009; *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App.2002); *In re Marriage of Foss*, 30 P.3d 850, 852 (Colo.App.2001).

■ "The intent of the income imputation provision ... is to impute income when the parent shirks his or her child support obligation by unreasonably foregoing higher paying employment that he or she could obtain." *Martinez*, 70 P.3d at 480; *see also In re Marriage of Swing*, 194 P.3d 498, 500 (Colo. App.2008).

A court may not deem a parent voluntarily unemployed or underemployed if it finds:

(1) the parent "is enrolled in an educational program that is reasonably intended to result in a degree or certification within a reasonable period of time and that will result in a higher income";

(2) "the educational program is a good faith career choice that is not intended to deprive the child of support"; and

(3) the parent's pursuit of the career "does not unreasonably reduce the support available to the child."

§ 14–10–115(5)(b)(III)(C).

■ Each of these conditions must be met before a parent will not be deemed voluntarily unemployed or underemployed pursuant to section 14–10–115(5)(b)(III)(C). Hence, if there is evidence that a parent is voluntarily unemployed or underemployed and a court finds that any of these conditions is not satisfied, the court may deem the parent to be voluntarily unemployed or underemployed.

## C. Application

Here, mother testified that she was attending a college where she was taking the prerequisites she needed to enroll in a registered nursing program, that she would complete the prerequisites in February 2010, and that she would complete the nursing program in the spring of 2013.

The trial court observed that mother did not pursue her degree while she was receiving maintenance and that by the time mother completed the degree, one of the children would be "more than half way through her child support years." On this basis, the court concluded that the length of mother's education plan, four and a half years, was not reasonable and that she was voluntarily unemployed.

■ "Reasonable" means "[f]air, proper, or moderate under the circumstances" or "[a]ccording to reason." *Black's Law Dictionary* 1293 (8th ed. 2004).

■ In our view, although the reasonableness of the length of mother's education plan must be determined in the context of the circumstances that are known or expected to exist during that time, it appears that the court's observation regarding mother's failure to pursue her degree while she was receiving maintenance reflected the court's concern about mother's good faith rather than the reasonableness of the length of the plan. The court's only consideration of circumstances known or expected to exist during mother's education was its observation that one of the children would be "more than half way through her child support years." We conclude that this consideration is not sufficient to support the conclusion that the length of mother's plan was not reasonable.

■ The court also found that

(1) "[m]other's desire to further her education and career is an admirable goal"; and

(2) mother already had "substantial job skills."

Although these findings and the court's observation that mother did not pursue her degree while she was receiving maintenance relate to mother's intentions, the court did not find that mother's plan was (1) not reasonably intended to result in a degree or certification; or (2) not a good faith career choice. Nor did it find that mother's plan (1) was intended to deprive the child of support, or (2) unreasonably reduced the support available to the child.

Because the court's only relevant consideration is not sufficient to support its finding regarding the reasonableness of the length of mother's education plan and the court did not make any determination or findings with respect to the other parts of section 14–10–115(5)(b)(III)(C), we remand the case for the court to make such determinations and findings.

### III.  Other Issues That May Arise on Remand

Because issues pertaining to the amount of income imputed to mother and child care expenses could arise on remand if the court again concludes that mother is voluntarily unemployed or underemployed, we consider them below.

### A.  Income Imputed to Mother

■ Mother contends that the trial court's imputation of income to her was not supported by the record because, although she does not dispute that she could earn $17 to 18 per hour, there was no evidence that she had worked full-time in the last five years. We are not persuaded.

■ We will not disturb the court's "factual findings as to imputation of income unless they are clearly erroneous and not supported by the record." *Atencio,* 47 P.3d at 720; *see also Martinez,* 70 P.3d at 480. The trial court may impute to the parent the annual income that he or she previously earned. *See In re Marriage of Martin,* 42 P.3d 75, 80 (Colo.App.2002). The court may "consider whether alternative employment is available, but the other parent does not have the burden of proving that a particular job

actually exists." *In re Marriage of Salby,* 126 P.3d 291, 298 (Colo.App.2005).

Here, there was evidence that mother worked as an emergency room technician for approximately sixteen years and an EMT for approximately seven years. There was also evidence that mother was currently qualified to work as an EMT. Therefore, even though mother had not worked as an emergency room technician or an EMT full-time since 2005, the court did not abuse its discretion in imputing full-time income to her based on her ability to work as an EMT because she was still qualified to do so. *See In re Marriage of Bregar,* 952 P.2d 783, 785 (Colo.App. 1997) ("the determination of the credibility of witnesses and the weight, probative force, and sufficiency of the evidence and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court").

We reject mother's argument that the court erred when it did not consider the current job market. The court may consider whether employment is available, but there was no evidence presented at the hearing regarding available employment. Rather, the evidence showed that mother had not looked for employment because she was enrolled as a student and testified that she did not believe she could hold a job and go to school at the same time because she needed to maintain an "A" average.

### B.  Child Care Expenses

Mother argues that the trial court erred when it did not include imputed full-time child care expenses in its calculation of child support after imputing full-time income to her. We disagree.

According to mother, any imputed amount of income should be offset by an imputed amount of day care expenses that would have been necessary to have generated that income: "Otherwise, the unemployed parent not only has income imputed but a support order that does not consider the expenses that flow from being employed. It results in the parent having a higher support obligation, while unemployed, than would be ordered based on employment and daycare expenses."

Mother's argument is, in essence, built on the premise that a parent's adjusted gross or potential income is calculated by subtracting actual or imputed child care expenses from actual or imputed income. However, by statute, child care expenses are not part of the adjusted gross (or potential) income calculation. *See* § 14–10–115(6), C.R.S.2009 (listing adjustments to gross income). Instead, they are considered expenses to be shared by the parents in proportion to their adjusted gross (or potential) incomes. *See* § 14–10–115(9)(a), C.R.S.2009.

■ Because of this, a trial court may only consider child care expenses that were actually incurred. *See* § 14–10–115(9)(a) (allowing adjustment of the child support obligation for child care expenses "incurred"); *In re Marriage of Ikeler*, 148 P.3d 347, 352 (Colo.App.2006) ("Only those costs actually incurred may be considered in the support calculation."), *rev'd on other grounds*, 161 P.3d 663 (Colo.2007); *cf. Mackey*, 940 P.2d at 1114–15 (the trial court erred in offsetting imputed child care expenses against the income it imputed to mother because " '[t]o require the obligor to be responsible for costs that are not actually incurred and which are speculative in nature seems patently unfair. The purpose of the [child support] Guidelines is to assess responsibility for costs actually incurred on behalf of the children in order to adequately address the children's needs.' ")(quoting Colorado Child Support Commission Report 15 (1991)).

Here, the trial court considered the entire amount of income it imputed to mother in its calculation of child support. The court also considered mother's part-time child care expenses that she actually incurred as set forth in section 14–10–115(9)(a). The court refused to impute child care expenses that had not been incurred by mother. We conclude that the court's refusal to do so was proper. *See Ikeler*, 148 P.3d at 352. Had the court included child care expenses in its child support calculation that were speculative and not actually incurred, it would have increased father's support obligation. Such a result would have been "patently unfair." *See Mackey*, 940 P.2d at 1115.

### IV.  Attorney Fees

■ Finally, mother contends that the trial court erred when it denied her request for attorney fees. Again, we disagree.

We review the trial court's determination regarding attorney fees under section 14–10–119 for an abuse of discretion. *See In re Marriage of Rodrick*, 176 P.3d 806, 815–16 (Colo.App.2007); *In re Marriage of Lishnevsky*, 981 P.2d 609, 612 (Colo.App.1999).

■ "In awarding attorney fees, the court must consider both the reasonableness of the hourly rate and the necessity for incurring the hours billed." *In re Marriage of Yates*, 148 P.3d 304, 315 (Colo.App.2006); *see also In re Marriage of Mockelmann*, 944 P.2d 670, 672 (Colo.App.1997). When requesting attorney fees under section 14–10–119, a party must present evidence of their reasonableness at the time of the hearing on the motion for which the attorney fees are sought. *See* C.R.C.P. 121, § 1–22(2) cmt. 2 ("Unless otherwise ordered by the court, [a request for] attorney fees under [section] 14–10–119 should be heard at the time of the hearing on the motion or proceeding for which they are requested."); *In re Marriage of Stress*, 939 P.2d 500, 504 (Colo.App.1997) (the mother's reliance on C.R.C.P. 121 section 1–22 was misplaced where she requested attorney fees under section 14–10–119 in her motion to modify child support).

Here, the trial court did not order that the issue of attorney fees would be heard after the hearing. Also, the parties did not stipulate that mother could submit her attorney fees by affidavit after the hearing. Therefore, mother was required to present evidence of the reasonableness and necessity of her attorney fees during the hearing. *See* C.R.C.P. 121, § 1–22(2) cmt. 2.

Although the parties stipulated to the reasonableness of mother's attorney's billing rate and mother testified that she had paid her attorney a total of $16,000 as of the date of the hearing, there was no evidence of the number of hours billed by her attorney nor the reasonableness and necessity of those hours, such as billing records, time records, or other documentary evidence. Further, mother's counsel represented to the court

that the evidence introduced during the hearing regarding attorney fees would be "rough estimates on what those fees were." We therefore conclude that the trial court properly denied mother's request for attorney fees under section 14–10–119. *See Yates,* 148 P.3d at 315.

The orders are affirmed as to mother's request for fees and reversed as to the modification of child support, and the case is remanded to the trial court for further proceedings, consistent with the views expressed in this opinion, to reconsider whether under section 14–10–115(5)(b)(III)(C) mother should be deemed voluntarily unemployed or underemployed and, if necessary, to recalculate the child support obligations accordingly.

Judge CARPARELLI and Judge HAWTHORNE concur.