25CA0234 Marriage of Williams 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0234
Teller County District Court No. 23DR30039
Honorable William H. Moller, Judge

In re the Marriage of

Kenneth Williams,

Appellant,

and

Nansi Briones,

Appellee.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

Law Office of Joel M. Pratt, Joel M. Pratt, Colorado Springs, Colorado, for
Appellant

No Appearance for Appellee

¶ 1   In this dissolution of marriage proceeding, Kenneth Williams (husband) appeals the portion of the district court's permanent orders allocating property between himself and Nansi Briones (wife). We affirm the judgment in part, reverse it in part, and remand the case to the court for further proceedings.

## I.   Background

¶ 2   The parties married in June 2019 and signed a marital agreement nine days later. Husband retained an attorney to draft the agreement. But wife was unrepresented throughout the process, including when she signed the agreement.

¶ 3   In the agreement, the parties categorized property as separate or marital. The agreement classified the residence located on Markus Road (Markus property) as husband's separate property. Wife waived any interest in the Markus property in the event of a dissolution of the marriage, including any claim to any increase in value during the marriage.

¶ 4   In September 2023, husband filed a petition to dissolve the marriage. During the dissolution proceedings, wife contested the enforceability of the marital agreement. Following a hearing, the district court first concluded that the agreement was unenforceable

because (1) wife did not have access to legal counsel; and (2) the agreement lacked a plain language advisement of the rights being waived by the parties. Then, as part of the overall division of property, the court ordered husband to pay wife $200,000. To arrive at this number, the court equally divided the equity in the Markus property ($412,000) and the value of the parties' time share ($18,000) and then subtracted from wife's half the debt that wife agreed she owed to husband ($15,000).

## II. Marital Agreement

¶ 5 Husband contends that the district court erred by finding the marital agreement unenforceable. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 6 Under the Uniform Premarital and Marital Agreements Act (UPMAA), a "[m]arital agreement" is "an agreement between spouses who intend to remain married which affirms, modifies, or waives a marital right or obligation during the marriage or at . . . marital dissolution . . . or the occurrence or nonoccurrence of any other event." § 14-2-302(2), C.R.S. 2025. A "[m]arital right or obligation" arises "between spouses because of their marital status" and

includes, but is not limited to, "[a] right to property, including characterization, management, and ownership." § 14-2-302(4)(b).

¶ 7     Under the UPMAA, a marital agreement is unenforceable if the party challenging enforcement proves, as relevant here, that the agreement did not include a notice of waiver of rights under section 14-2-309(3), C.R.S. 2025, or a plain language explanation of the marital rights modified or waived via agreement, unless the party had independent legal representation when the agreement was signed.  § 14-2-309(1)(c).

¶ 8     A marital agreement is a contract between the parties.  *See In re Marriage of Fiffe*, 140 P.3d 160, 163 (Colo. App. 2005) (holding that premarital agreements should be construed in the same manner as other contracts).  We review questions of contract interpretation de novo, and we must evaluate the contract as a whole.  *Gagne v. Gagne*, 2014 COA 127, ¶¶ 50-51; *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo. App. 2010).  We also review the district court's interpretation of the UPMAA and its other legal conclusions de novo.  *See In re Marriage of Ikeler*, 161 P.3d 663, 666 (Colo. 2007) (addressing the Colorado Marital Agreement Act, the predecessor to the UPMAA).

3

## B.    Analysis

¶ 9	In reasoning that the agreement was unenforceable, the district court found that it lacked a section 14-2-309(3) notice of waiver and a plain language advisement of the marital rights being waived.  § 14-2-309(1)(c).  In so finding, the court focused on the agreement's language, husband's inability to define two terms — "family allowance" and "homestead exemption" — during his testimony, and wife's overall testimony.

¶ 10	Husband first asserts that the district court erred by failing to analyze the agreement for a plain language waiver after finding that it lacked the section 14-2-309(3) notice.  Because the court made a clear finding that there was "no plain language advisement illustrating the rights being given up by the parties . . . in the agreement," this argument fails.

¶ 11	Husband next asserts that the court applied the wrong test when analyzing if the marital agreement contained a plain language waiver by focusing not on the plain language of the agreement but, instead, on the parties' subjective understanding about arbitrary terms of the agreement.  We agree that the court improperly focused on the parties' subjective understanding of specific contract terms.

4

Nevertheless, we concur with the district court that, overall, the agreement lacked a plain language advisement of the marital rights purportedly waived by the parties.

¶ 12　　True, as husband asserts, the agreement contained language defining, acknowledging, and waiving certain rights. However, the question is whether these terms constituted "plain language" as contemplated by the statute. *See* § 14-2-309(1)(c). While the statute does not define plain language, it is clear that it does not mean legalistic language. The language contemplated by section 14-2-309(1)(c) is only required if the party against whom enforcement is sought lacked "independent legal representation at the time the agreement was signed." *Id.* If legalistic language was sufficient, there would be no need to distinguish between represented and unrepresented parties. *See Ikeler*, 161 P.3d at 667 ("We will interpret a statute to give consistent, harmonious, and sensible effect to all its parts."); *People v. District Court*, 713 P.2d 918, 921 (Colo. 1986) ("If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted.").

¶ 13　　In reviewing the agreement, we conclude the language used was legalistic rather than "plain language" as required by section 14-2-309(1)(c).  For example, the agreement stated that "each party irrevocably waive[d] and release[d] any rights he or she may . . . have or acquire in any qualified employee benefit plan and individual retirement accounts now owned by the other" and "[t]he parties waive[d] and release[d] all claims and rights to any award of equitable distribution from or on account of the separate property and the estate of the other."  These statements are not sufficiently plain to make clear to an unrepresented party what rights were being waived in the event of a dissolution of the marriage.  Thus, we affirm the district court's order concluding that the agreement was unenforceable.[1]

---

[1] Because we have concluded that the district court correctly determined that the agreement was unenforceable for lack of a plain language advisement, we need not address husband's other contention that the district court erred by finding that wife did not have access to legal counsel as required by the statute.  *See* § 14-2-309(1)(b)-(c), C.R.S. 2025 (lack of access to an attorney and lack of a plain language explanation of rights are two distinct bases for relief from enforcement of a marital agreement).

## III. Property Division

¶ 14    Husband next asserts that the district court erred by equally dividing the equity in the Markus property. We agree that additional findings are necessary.

### A. Applicable Law and Standard of Review

¶ 15    The disposition of marital property is governed by the Uniform Dissolution of Marriage Act (UDMA). *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). A property division in a marital dissolution case requires two steps: first, the court must determine whether an interest constitutes "property" and then, if so, whether it is marital or separate property. *Id.*

¶ 16    Under section 14-10-113, C.R.S. 2025, subject to certain specified exceptions, all property acquired by either spouse during the marriage is presumed marital. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 18. In contrast, marital property "does not include property that the spouses acquired before the marriage, or that they have agreed will remain separate." *In re Marriage of Corak*, 2014 COA 147, ¶ 11 (citing § 14-10-113(2)-(4)). Thus, the court must set aside the spouse's separate property before dividing the marital property. § 14-10-113(1). The court may not divide or order the

7

transfer of any separate property. *See In re Marriage of Sarvis*, 695 P.2d 772, 774 (Colo. App. 1984) (holding that an order for husband to convey his premarital condominium to wife was violative of the statutory requirement that the court set aside to each party their separate property); *In re Marriage of Ikeler*, 148 P.3d 347, 350 (Colo. App. 2006) (concluding that because "the statute mandates that separate property remain separate," the district court "could not have conveyed any ownership attributes" of the husband's separate vehicle to the wife), *rev'd on other grounds*, 161 P.3d 663 (Colo. 2007); *In re Marriage of Mitchell*, 55 P.3d 183, 185 (Colo. App. 2002) ("[B]ecause the . . . real property was husband's separate property, it could not be awarded to wife in the permanent orders."). However, the increase in the value of a spouse's separate property during the marriage is marital property subject to division. *See Mitchell*, 55 P.3d at 185; § 14-10-113(4).

¶ 17　　The classification of property as marital or separate is a legal determination that is based on the district court's factual findings. *In re Marriage of Morton*, 2016 COA 1, ¶ 5. The court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order. *In re Marriage of Rozzi*, 190

8

P.3d 815, 822 (Colo. App. 2008). We review the court's factual findings for clear error but review the court's legal conclusions de novo. *Martinez v. People*, 2024 CO 6M, ¶ 24; C.R.C.P. 52.

### B. Analysis

¶ 18 Husband contends that the district court erred by not allocating the premarital equity in the Markus property to him as his separate property.

¶ 19 During the permanent orders hearing, neither party disputed that husband purchased the Markus property one year before the marriage. And the property remained titled solely in his name. Wife appeared to concede husband's separate property interest and testified that she only sought her "share of the equity earned throughout the time [they] were married." Indeed, the court's written permanent orders acknowledges that wife sought "only a division of the marital equity."

¶ 20 Here, the district court equally divided the "current equity in the home occupied by the parties." The court made no explicit findings classifying the Markus property as separate or marital before dividing the equity. We are unable to discern from the court's order whether it found the entire amount of equity in the

Markus property to be marital and, if so, what evidence it relied on to make such a finding. *See Rozzi*, 190 P.3d at 822 ("A trial court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision."). Absent sufficient findings, the property division cannot stand. We therefore reverse the district court's property division and remand this issue to the district court for further consideration.

¶ 21 On remand, the court must first determine whether the Markus property is separate or marital. If the court determines that the Markus property is husband's separate property, it may not convey any ownership interest in that property to wife. It must then determine whether the equity in the Markus property is separate or marital and divide only the marital equity (the increase in value during the marriage) between the parties, setting aside to husband any separate equity. The court must also make sufficient findings to enable a reviewing court to determine the grounds upon which it rendered its decision. *See id.* We note that if the property allocation is adjusted on remand, the district court must also

10

reexamine maintenance and child support. *In re Marriage of Jones*, 627 P.2d 248, 253 (Colo. 1981) ("Only after the property division has been made can the court determine, by application of the statutory standards, whether maintenance is necessary to provide for the reasonable needs of one of the parties."); *In re Marriage of de Koning*, 2016 CO 2, ¶ 26 ("When a trial court . . . revisit[s] a property division, it must also reevaluate maintenance and attorney's fees awards in light of the updated property division, because the issues are interdependent.").

## IV.  Attorney Fees

¶ 22    Husband's sole basis for requesting an award of his appellate attorney fees is the "fee-shifting provision" of the parties' marital agreement. Because we affirm the district court's conclusion that the agreement was unenforceable, we deny husband's request for attorney fees.

## V.  Disposition

¶ 23    We reverse the district court's property division and, as a result, also reverse its maintenance and child support orders. We affirm the court's order invalidating the premarital agreement. We

remand the case for further proceedings consistent with this opinion.

JUDGE BROWN and JUDGE MEIRINK concur.