25CA1197 Parental Resp Conc TNP 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1197
Jefferson County District Court No. 21DR30188
Honorable Christopher B. Rhamey, Judge

In re the Parental Responsibilities Concerning T.N.P., a Child,

and Concerning Calvin Parshad,

Appellee,

and

Victoria Melavic,

Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE MOULTRIE
Dunn and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

No Appearance for Appellee

Byram Law, P.C., Elle Byram, Broomfield, Colorado, for Appellant

¶ 1    Victoria Melavic (mother) appeals the district court's post-decree order modifying Calvin Parshad's (father) child support obligation. We affirm in part, reverse in part, and remand the case for further proceedings.

## I.    Background

¶ 2    The parties have a son, T.N.P. (the child), who was born in July 2020. In March 2021, father filed a petition for an allocation of parental responsibilities. Eight months later, the district court adopted the parties' agreed-upon parenting plan. The agreement included a step-up plan that increased father's parenting time as the child grew older. Consequently, the parties agreed that as father's parenting time increased, his child support obligation would decrease. As a result, starting in July 2022, father's child support obligation was $97 per month. Father was also responsible for maintaining health insurance for the child.

¶ 3    In May 2023, mother filed a motion to modify child support, asserting that there had been a substantial and continuing change in circumstances; specifically, she asserted that her income had decreased and father's had increased. She also asserted that the cost of the child's health insurance premium was lower than what

father claimed. And she argued the parties' agreement should be modified to require each party to pay for any work-related child care during their respective parenting time.

¶ 4    After several continuances, the district court began the hearing on mother's motion in January 2025. However, during mother's cross-examination of father, the court became aware of the fact that father may have provided a forged paystub as evidence of his income. At that point, the court continued the hearing to allow mother to subpoena records from father's employer.

¶ 5    Four months later, the district court resumed the hearing on mother's motion. Then, two years after mother filed her motion to modify, the court issued a written order increasing father's ongoing child support obligation to $615 per month. However, the court declined to order that modification be retroactive to the date mother filed the motion to modify.

¶ 6    Thereafter, mother filed a motion for post-trial relief under C.R.C.P. 59. The court denied the motion.

II.    Legal Framework and Standard of Review

¶ 7    Children have a legal right to be financially supported by their parents, and parents have a legal obligation to provide reasonable

2

child support.  *In re Marriage of Gallo*, 2024 COA 86, ¶ 15.  Section 14-10-115, C.R.S. 2025, provides Colorado's child support guidelines and the schedule of basic child support obligations, which assist the court in calculating child support based on the parents' combined adjusted gross income and the child's physical care arrangements.  *See* § 14-10-115(1)(b).  In other words, the child support guidelines ensure that parents equitably contribute to a child's expenses.  *Gallo*, ¶ 15.

¶ 8    Section 14-10-122(1), C.R.S. 2025, vests the district court with the sole authority to modify child support orders.  *Gallo*, ¶ 15. A child support decree may be modified "upon a showing of changed circumstances that are substantial and continuing." § 14-10-122(1)(a); *Gallo*, ¶ 16.

¶ 9    In general, we review child support orders for an abuse of discretion.  *In re Marriage of Boettcher*, 2019 CO 81, ¶ 12.  However, we review de novo whether the district court applied the correct legal standard when crafting the order.  *Id.*  Further, we review factual findings as to income for clear error and won't disturb them unless they aren't supported by the record.  *See In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App. 2002); *see also In re Marriage*

*of Collins*, 2023 COA 116M, ¶ 30 (the district court has broad discretion in determining income, and we won't disturb the court's income findings when they are supported by the record).

### III.    Ongoing Child Support Obligation

¶ 10    Mother contends that the district court abused its discretion in two ways when it calculated father's ongoing child support obligation.  First, she argues that the court "disregarded evidence and misapplied the law" when it calculated her income.  Second, she argues that the court erroneously credited father for child care costs "even though there was no evidence" that father would continue to pay for child care when the child started kindergarten "a few months after the hearing."  We aren't persuaded.

### A.    Mother's Income

### 1.    Applicable Law

¶ 11    To calculate child support, the district court must use a parent's actual gross income unless it determines that the parent is voluntarily underemployed, meaning the parent is shirking their child support obligation by unreasonably forgoing higher paying employment that they could obtain.  *People v. Martinez*, 70 P.3d 474, 479-80 (Colo. 2003).  A parent's actual gross income "includes

4

income from any source, except as otherwise provided in subsection (5)(a)(II)" of section 14-10-115. § 14-10-115(5)(a)(I); *In re Marriage of Tooker*, 2019 COA 83, ¶ 13.

¶ 12     However, if the district court finds that a parent is voluntarily underemployed, then the court calculates child support based on that parent's potential income. § 14-10-115(5)(b)(I); *Martinez*, 70 P.3d at 477. Potential income is the income a party could earn from a full-time job commensurate with their demonstrated earning ability. *Tooker*, ¶ 26.

### 2.    Analysis

¶ 13     Mother argues that the district court erred by imputing her income after finding that she wasn't voluntarily underemployed. We disagree because, despite the court's use of the word "impute," the record shows that it used mother's actual income, not her potential income, for purposes of calculating child support.

¶ 14     We acknowledge that the district court's findings about mother's income, at first glance, are confusing. The court first found that mother's decision to quit her nursing job and become a nanny was "a good faith occupational change." In other words, it found that mother wasn't voluntarily underemployed. But then it

found, based on one of father's exhibits, that mother's "appropriate" potential yearly income as a nurse would be $89,500. And then it stated that, instead of using mother's potential yearly income of $89,500, it would "impute" her income at $85,899.

¶ 15 Nonetheless, it is clear that the district court's income finding of $85,899 was based on its calculation of mother's actual income as a nanny, not her potential income as a nurse. As the court explained in detail, it used mother's bank account statements from the fifteen months leading up to the hearing — a timeframe in which mother only worked as a nanny — to calculate her income. Specifically, the court combined the average amount of money deposited into mother's account with the average amount of money mother received from her investment accounts every month. It determined that the sum of those averages — deposits plus investment income — accurately represented mother's income.

¶ 16 Importantly, mother's testimony indicated that her nanny income fluctuates; she testified that she earns income both from nannying some children on a regular basis but also from nannying some children on a "drop-in" basis. When a parent's income substantially fluctuates, a district court may, as it did here,

6

calculate an average of past earnings to determine a parent's income. *See In re Marriage of Salby*, 126 P.3d 291, 299 (Colo. App. 2005). And doing so doesn't imply a finding of underemployment or mean that the court based its determination on the parent's potential income. *Cf. In re Marriage of Rice*, 987 P.2d 947, 949-50 (Colo. App. 1999) (noting, without discussing income imputation or voluntary underemployment, the court's discretion to determine income by averaging past earnings). Thus, we disagree with mother's assertion that the court imputed her income.

¶ 17 Moreover, we conclude that the district court's income determination was supported by the record. Mother's bank account statements were admitted as exhibits during the hearing. Mother testified that all of her nanny clients paid her "[d]irectly from their bank accounts through Zelle to [her] bank account." She further testified that all of the deposits shown in her bank account statements were "from work" except for the child support payments. *See* § 14-10-1155(a)(II)(A) (excluding child support payments received from the definition of "gross income"). And she testified that her income included the withdrawals from her investment accounts.

¶ 18    Last, we reject mother's argument that the district court "disregarded evidence" in calculating her income. True, mother testified that her income was lower than what the court calculated. But the court didn't find that her testimony was credible. And we can't reweigh the evidence or disturb the court's findings when, as here, they have record support and are based on credibility determinations. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 ("[Even when] there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *see also In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) ("It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence.").

¶ 19    Based on the foregoing, we discern no error in the court's determination of mother's income.

## B.    Allocation of Child Care Costs

### 1.    Applicable Law

¶ 20    Work-related child care costs are generally divided between the parents in proportion to their incomes. § 14-10-115(9)(a); *In*

*Interest of A.M.D.*, 56 P.3d 1184, 1189 (Colo. App. 2002), *rev'd on other grounds*, 78 P.3d 741 (Colo. 2003). The child support guidelines establish a rebuttable presumption that child care costs are added to the basic child support obligation. *In re Marriage of Finer*, 920 P.2d 325, 329 (Colo. App. 1996). A district court may only consider child care expenses that are actually incurred. *In re Marriage of Connerton*, 260 P.3d 62, 67 (Colo. App. 2010).

### 2.    Analysis

¶ 21    Mother contends that the district court erred when it credited father $1,093 per month for work-related child care costs. She asserts that father failed to prove that he would continue to pay for child care after the child started kindergarten and that there was "no evidence" to support the court's allocation of child care costs. We disagree.

¶ 22    At the hearing, father testified that he paid "a little over $1,000" per month for the child's early childhood education program. He also testified that he anticipated paying the same amount for child care for "at least another four or five years" because the program could accommodate children through the fifth grade and father planned to continue to send the child there.

Moreover, the district court admitted and relied on an exhibit that included invoices from the child's early education program. Although the court noted that there were "inconsistencies in the amounts billed," it found, based on father's testimony and the most recent invoice, that father's "current" child care cost was $1,093 per month. And, while mother argued that the child care costs should be "dropped" from the child support calculation because the child was about to start kindergarten, she didn't present any evidence contradicting father's evidence of his current child care costs, nor did she present any evidence showing that kindergarten would be free. *See In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003) (a party who fails to present sufficient evidence at trial should not be allowed on appeal to challenge the inadequacy of the evidence).

¶ 23    We acknowledge that the district court found that father lacked credibility "in light of his document alteration [and] his willingness to present false testimony." Even so, it was within the court's discretion to rely on the parts of father's testimony and evidence that it found to be credible. *See Hatton*, 160 P.3d at 330. Again, we can't reweigh the evidence or disturb the court's findings

when, as here, they have record support and are based on credibility determinations. *See id.*; *Nelson*, ¶ 35.

¶ 24 Based on the foregoing, we conclude that the district court didn't err in its allocation of child care costs. Thus, we discern no reason to reverse the court's calculation of father's ongoing child support obligation of $615 per month.

### IV. Retroactive Modification of Child Support

¶ 25 Mother also contends that the district court abused its discretion by declining to order that child support be modified retroactively to May 2023 — the date that mother filed the motion to modify child support. She argues that the court misapplied the "undue hardship and substantial injustice standard" and disregarded the evidence showing the parties' past incomes. We agree.

### A. Applicable Law

¶ 26 A child support modification "should be effective as of the date of the filing of the motion, unless the court finds that it would cause undue hardship or substantial injustice." § 14-10-122(1)(d); *Nelson*, ¶ 40. Undue hardship or substantial injustice isn't created merely by retroactively enforcing a properly calculated child support

obligation even if a parent is financially inconvenienced by the order. *In re Marriage of Armit*, 878 P.2d 101, 103 (Colo. App. 1994).

¶ 27     The analysis of whether retroactive modification will cause undue hardship or substantial injustice is fact intensive and typically involves an evaluation of the obligor's financial circumstances. *See e.g.*, *Nelson*, ¶ 41 (the record didn't show undue hardship because husband's income had increased such that he was able to pay the retroactive maintenance); *Armit*, 878 P.2d at 102-03 (in determining that the court erred by denying retroactive modification of child support, the division focused on whether the obligor had unusual or unique financial circumstances that hindered his ability to pay).

## B.     Analysis

¶ 28     At the beginning of the hearing, mother clarified that she wanted the order modifying child support to be retroactive to the date she filed the motion to modify. In response, the district court stated that ordering modification retroactive to the date of filing "gets real messy" and is "potentially very complicated." The court went on to state that it was "inclined to figure out what [child support] needs to be now [and] . . . make an order moving forward."

Then, in its order modifying child support, the court found the following:

> The Court was provided with scant information to determine proper child support, dating back to the Motion for Modification on May 17, 2023. Although the Court was able to determine income by reviewing documentation dating back to January of 2024, the Court is devoid of sufficient evidence of income in 2023, and the Court is unable to ascertain the appropriate childcare deductions based on the information provided. Further, applying retroactive payment will certainly lead to communication between Parties who have demonstrated an inability to resolve basic issues. The Court finds retroactive modification will create undue hardship and substantial injustice.

¶ 29    We conclude that the district court erred by denying retroactive modification for three reasons.[1]

---

[1] Mother also argues that the delay between the filing of the motion to modify child support and the hearing is insufficient to demonstrate that father would be unduly burdened by retroactive child support. True, undue hardship isn't created simply because time has passed due to a court's docketing delays. *See In re Marriage of Armit*, 878 P.2d 101, 103 (Colo. App. 1994). But we need not address this argument because the court didn't cite docketing delays or the amount of time that had passed between the filing of the motion and the hearing as a basis for denying retroactive support.

¶ 30    First, the record belies the district court's finding that the evidence was too "scant" to determine the parties' 2023 incomes. As mother points out, father's W-2 form, which was admitted into evidence, showed his total earnings for 2023. The court also took judicial notice of mother's sworn financial statement from October 2023 in which mother estimated her income and expenses at that time. Indeed, the court determined mother's monthly income throughout 2023 for purposes of calculating the parties' current child support obligation. Moreover, it was clear from mother's proposed child support worksheets, which were admitted as demonstrative exhibits, that mother was willing to use her current income for purposes of calculating retroactive child support even though it was arguably higher than what she earned in 2023. And to the extent that the court found that it didn't have enough information to calculate father's past child care costs, it wasn't required to credit father for costs he didn't prove he incurred. *See Connerton*, 260 P.3d at 67 (Colo. App. 2010).

¶ 31    Second, it is unclear how modifying child support to the date mother filed the motion would lead to more communication between the parties, and the court didn't explain how it would. And even if

14

it would lead to more communication, the court didn't explain how requiring the parents to communicate would cause undue hardship or a substantial injustice.

¶ 32    Third, father didn't argue, nor does the record show, that applying the statute would cause undue hardship or substantial injustice.  In fact, at the hearing, father's counsel stated that "we're okay with the support being retroactive [to] the date of filing or moving forward."  And the evidence showed that father's income increased between the date of filing and the date of the court's order modifying child support.  *Cf. Nelson*, ¶ 41 (upholding maintenance modification as of date of motion to modify when, although the court made no finding concerning hardship, the husband's income had increased such that he was able to pay the retroactive maintenance).

¶ 33    Based on the foregoing, we conclude that the district court abused its discretion by denying mother's request for retroactive modification to the date she filed the motion to modify.  And because the hearing on mother's motion to modify was delayed for two years, the error deprived the child of a substantial amount of child support.  *See Gallo*, ¶ 15 ("Child support rights belong

exclusively to a child."). Thus, the error wasn't harmless. *See* C.A.R. 35(c); C.R.C.P. 61; *see also In re Parental Responsibilities Concerning E.E.L-T.*, 2024 COA 12, ¶ 30 (we reverse if an error resulted in substantial prejudice to a party).

## V.    Disposition

¶ 34    We reverse the portion of the district court's order that denied mother's request for retroactive modification of child support. We remand the case for the court to calculate and enter a modified child support order for the timeframe between mother's filing of the motion to modify and the date the court entered its order modifying child support. We otherwise affirm the court's order.

JUDGE DUNN and JUDGE HARRIS concur.